**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 24 1998**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

ARTHUR DONNELL MILLER, JR.,

  Petitioner-Appellant,

v.

RON CHAMPION,

  Respondent-Appellee.

No. 97-6439

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. No. CIV-97-867-A)

Arthur Donnell Miller, Jr., pro se.

W.A. Drew Edmondson (Attorney General of Oklahoma) and Patrick T. Crawley (Assistant Attorney General of Oklahoma), Oklahoma City, Oklahoma, for Respondent-Appellee.

Before **PORFILIO** , **KELLY** , and **HENRY** , Circuit Judges.

**HENRY** , Circuit Judge.

  Arthur Donnell Miller, Jr. filed this pro se appeal after the district court, without holding an evidentiary hearing, denied his 28 U.S.C. § 2254 petition for a writ of habeas corpus  and also denied his subsequent request for a certificate of

appealability. In August, we issued a certificate of appealability to Mr. Miller and ordered the respondent, Ron Champion, to file a brief addressing several issues that Mr. Miller raised in his petition. After reviewing Mr. Champion's response brief, we now vacate the district court's decision denying Mr. Miller's petition and remand for an evidentiary hearing. [1]

## BACKGROUND

After Mr. Miller shot and killed a man, he was charged in Oklahoma state court with first-degree murder. Following negotiations with the prosecutor, Mr. Miller pleaded guilty to a reduced charge of second-degree murder and was sentenced to 38 years imprisonment. Although Mr. Miller did not directly appeal his conviction, he did file a petition for post-conviction relief in state district court. In his petition, Mr. Miller alleged that he had received ineffective assistance of counsel because his attorney had failed to inform him that one of the elements of second-degree murder under Oklahoma law is that a defendant act with a "depraved mind." See Okla. Stat. tit. 21, § 701.8(1). Mr. Miller asserted that had he known that depraved mind was an element of second-degree

---

[1]After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. Accordingly, we hereby order the case    submitted without oral argument.

2

murder, he would not have pleaded guilty and would have instead insisted on proceeding to trial.

The state district court denied Mr. Miller's petition, ruling that his failure to appeal his conviction directly barred him from obtaining habeas relief and, in addition, that he had failed to demonstrate that his counsel's performance was constitutionally deficient. On appeal, the Oklahoma Court of Criminal Appeals affirmed this ruling.

Mr. Miller then filed the instant § 2254 petition in federal court, once again alleging ineffective assistance of counsel based on his attorney's failure to inform him of the "depraved mind" element of second-degree murder. The district court referred the case to a magistrate judge. In his report and recommendation, the magistrate recommended dismissal of the petition; although the magistrate found that Mr. Miller's petition was not barred by his failure to file a direct appeal, he nonetheless found that Mr. Miller had failed to demonstrate that his counsel had performed ineffectively. Over Mr. Miller's objection, the district court adopted the magistrate's report and recommendation and dismissed the petition. The court subsequently denied Mr. Miller's request for a certificate of appealability.

Mr. Miller then appealed both the district court's denial of his § 2254 petition and its denial of his request for a certificate of appealability. After

3

reviewing Mr. Miller's petition and concluding that he had made a substantial showing of the denial of his Sixth Amendment right to the effective assistance of counsel, we granted his request for a certificate of appealability pursuant to 28 U.S.C. § 2253(c).

## DISCUSSION

### I    Procedural Bar

In response to Mr. Miller's petition, Mr. Champion contends that Okla. Stat. tit. 22, § 1086 and    Jones v. State  , 704 P.2d 1138 (Okla. Crim. App. 1985), bar Mr. Miller from obtaining post-conviction relief.     These authorities provide that under Oklahoma law, a petitioner who fails to raise a claim on direct appeal and does not demonstrate sufficient reason for such failure is barred from obtaining relief on that claim in a subsequent collateral proceeding.     See Jones , 704 P.2d at 1138-39;    see also  McCracken v. State  , 946 P.2d 672, 676 (Okla. Crim. App. 1997);   Neill v. State  , 943 P.2d 145, 148 (Okla. Crim. App. 1997).

However, notwithstanding Oklahoma state law to the contrary, we have held that a state prisoner may raise an ineffective assistance of counsel claim for the first time in a § 2254 proceeding unless (1) he had an opportunity to consult with separate counsel on direct appeal in order to obtain an effective assessment of trial counsel's performance and (2) the State provided a procedural mechanism

4

that afforded him an opportunity to develop adequately the factual basis of his ineffective assistance claim on direct appeal. See English v. Cody , 146 F.3d 1257, 1263 (10th Cir. 1998). In this case, the record contains no evidence that Mr. Miller had the opportunity to consult with separate appellate counsel in order to evaluate his attorney's performance or that Oklahoma provided him with any procedural mechanism to develop the factual basis of his ineffective assistance claim on direct appeal. Accordingly, Mr. Miller's habeas petition is not barred, and we may proceed to the merits of his claim.

## II    Standards of Review

In his petition, Mr. Miller alleged that he was denied his Sixth Amendment right to effective assistance of counsel. The district court dismissed the petition without conducting an evidentiary hearing.

Prior to the enactment of the Antiterrorism and Effective Death Penalty Act (AEDPA), to be entitled to an evidentiary hearing, a petitioner was first required to "make allegations which, if proved, would entitle him to relief." Medina v. Barnes , 71 F.3d 363, 366 (10th Cir. 1995). If the petitioner made the requisite allegations, he was entitled to an evidentiary hearing only if "'the facts [were] in dispute, [and he] did not receive a full and fair evidentiary hearing in a state court.'" Id. at 369 (quoting Townsend v. Sain , 372 U.S. 293, 312 (1963), overruled on other grounds , Keeney v. Tamayo-Reyes , 504 U.S. 1 (1992)). Mr.

5

Miller, though, filed his habeas petition after Congress enacted the AEDPA. Thus, we must consider the effect of the AEDPA on standards governing evidentiary hearings.

28 U.S.C. § 2254(e)(2) provides:

If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that--

(A)   the claim relies on--

(i)   a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(ii)   a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B)   the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

Thus, "[t]he petitioner who seeks an evidentiary hearing in federal court must now clear the 'initial hurdle' of § 2254(e)(2) before the court can proceed to determine whether an evidentiary hearing is otherwise proper or necessary." Cardwell v. Greene, 152 F.3d 331, 337 (4th Cir. 1998) (citation and quotation omitted).  Consequently, we begin by asking whether Mr. Miller has "failed to develop the factual basis of a claim in State court."  See 28 U.S.C. § 2254(e)(2). If he has, we must deny hearing unless he establishes that one of the two

6

exceptions set forth in § 2254(e)(2) applies. "If, on the other hand, the applicant has not 'failed to develop' the facts in state court, [we] may proceed to consider whether a hearing is appropriate, or required under [pre-AEDPA standards]." Cardwell , 152 F.3d at 337.

Although the record indicates that Mr. Miller requested an evidentiary hearing in state court, the court denied this request. See Rec. doc. 10, Exh. A, at 11; id. doc. 2, at 3. We now join every other circuit that has confronted this question and hold that where, as here, a habeas petitioner has diligently sought to develop the factual basis underlying his habeas petition, but a state court has prevented him from doing so, § 2254(e)(2) does not apply. See Cardwell , 152 F.3d at 337; McDonald v. Johnson , 139 F.3d 1056, 1059 (5th Cir. 1998); Burris v. Parke , 116 F.3d 256, 258-59 (7th Cir.), cert. denied , 118 S. Ct. 462 (1997); Jones v. Wood , 114 F.3d 1002, 1012-13 (9th Cir. 1997); Love v. Morton , 112 F.3d 131, 136 (3d Cir. 1997). Accordingly, the AEDPA does not preclude Mr. Miller from receiving an evidentiary hearing. Thus, Mr. Miller is entitled to receive an evidentiary hearing so long as his allegations, if true and if not contravened by the existing factual record, would entitle him to habeas relief. See Medina , 71 F.3d at 368-69.

A petitioner is entitled to a writ of habeas corpus only if he can demonstrate that his conviction is "contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The Supreme Court has set forth a two-part test for evaluating the claim of a habeas petitioner who is challenging his guilty plea on the ground that he was denied his Sixth Amendment right to effective assistance of counsel. First, we must ask whether "counsel's representation fell below an objective standard of reasonableness." Hill v. Lockhart, 474 U.S. 52, 57 (1985) (quoting Strickland v. Washington, 466 U.S. 668, 688 (1984)). To demonstrate that his attorney's performance fell below this standard, Mr. Miller must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.

Even if Mr. Miller is able to satisfy the first prong of this test, he will not be entitled to relief unless he is also able to demonstrate that his counsel's performance prejudiced him, i.e., "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59. The Supreme Court has explained that "[i]n many guilty plea cases, the 'prejudice' inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial." Id. The Court has also emphasized that "these predictions of the outcome at a possible trial, where necessary, should be made

8

objectively, without regard for the 'idiosyncracies of the particular decisionmaker.'" Id. at 59-60 (quoting Strickland, 466 U.S. at 695).

Mr. Miller's ineffective assistance claim presents a mixed question of law and fact. Parker v. Champion, 148 F.3d 1219, 1221 (10th Cir. 1998). Because our analysis of this claim primarily involves consideration of legal principles, we review this claim de novo. See id. Further, we note that because the state court did not hold any evidentiary hearing, we are in the same position to evaluate the factual record as it was. Accordingly, to the extent the state court's dismissal of Mr. Miller's petition was based on its own factual findings, we need not afford those findings any deference. See Nguyen v. Reynolds, 131 F.3d 1340, 1359 (10th Cir. 1997) ("[Although] [f]ederal courts entertaining habeas petitions must give a presumption of correctness to state courts' factual findings, . . .[t]his presumption of correctness does not apply . . . if the habeas petitioner did not receive a full, fair, and adequate hearing in the state court proceeding on the matter sought to be raised in the habeas petition."), cert. denied, 1998 WL 313396 (Oct. 5, 1998).

## III    Whether Mr. Miller Has Alleged Facts Sufficient to Demonstrate Ineffectiveness

In his habeas petition, Mr. Miller alleges that he was denied his Sixth Amendment right to effective assistance of counsel because his attorney failed to inform him that, in order to secure a conviction for second-degree murder, the

9

State would have been required to prove that he acted with a depraved mind. See Okla. Stat. tit. 21, § 701.8 ("Homicide is murder in the second degree . . . : 1. When perpetrated by an act imminently dangerous to another person and evincing a depraved mind, regardless of human life, although without any premeditated design to effect the death of any particular individual."). Neither the plea hearing transcript nor the "Plea of Guilty and Summary of Facts" statement that Mr. Miller signed contain any evidence–either direct or indirect–that Mr. Miller's attorney ever informed him of the depraved mind element. Thus, we must determine whether such a failure, if proven, would be sufficient to demonstrate that "counsel's representation fell below an objective standard of reasonableness." See Hill v. Lockhart, 474 U.S. at 57 (quoting Strickland, 466 U.S. at 688).

The Supreme Court emphasized the importance of informing a defendant of the elements of the offense in Henderson v. Morgan, 426 U.S. 637 (1976). In that case, the Court vacated a guilty plea to a charge of second-degree murder because neither the petitioner's attorney nor the court informed the petitioner that intent to cause the death of his victim was an element of the offense. See id. at 647. The Court ruled that a guilty plea made under such circumstances could not be deemed a voluntary and intelligent admission that he had committed the crime.

10

See id. at 645.  Accordingly, it concluded that a conviction entered following such a plea violated a defendant's due process rights.        See id. at 647.

In Henderson , the trial court found as fact that the petitioner's counsel had not explained the intent element to him.  Although this finding was "essential to the result in  Henderson ," 2 Wayne R. LaFave & Jerold H. Israel,     Criminal Procedure  § 20.4, at 643 (1984), it did not end the Court's analysis.  Rather, focusing on the principle that a defendant is entitled to "real notice of the true nature of the charge against him,"     Henderson , 426 U.S. at 641 (quoting    Smith v. O'Grady , 312 U.S. 329, 334 (1941)), the Court proceeded to examine the entire record to determine whether the petitioner had received noticed of this element through other any means, such as a plea colloquy, stipulation, or an indictment.  Finding no such evidence, the Court set aside the conviction, concluding that a plea made under such benighted circumstances could not be deemed voluntary.  See id. at 646-47.

In explaining why its holding would not invite a flood of habeas claims, the Henderson  Court emphasized that "[n]ormally the record contains either an explanation of the charge by the trial judge, or at least a representation by defense counsel that the nature of the offense has been explained to the accused."  Id. at 647.  Further, the Court stated that "it may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in

11

sufficient detail to give the accused notice of what he is being asked to admit." Id. Finally, the Court noted that its decision does not "require[] a description of every element of the offense" but, rather, only "critical element[s]." Id. at 647 n.18.

Although Henderson spoke in terms of a petitioner's Fifth Amendment right to receive "real notice of the true nature of the charge against him" before pleading guilty, see id. at 645 (quoting Smith v. O'Grady, 312 U.S. at 334), the case is equally applicable in the Sixth Amendment arena. After all, if the defendant's attorney does not supply his client with notice of the critical elements of the crime to which he is pleading guilty, and the defendant does not learn this information from another source, the attorney has deprived the defendant of his right to make a fully informed and voluntary decision regarding the prosecution's plea offer. Accordingly, if neither the court nor some other source provides a defendant with notice of the critical elements of the crime to which he intends to plead guilty, the Sixth Amendment requires that the defendant's attorney supply his client with the requisite notice in order to ensure that the ensuing plea is knowing and voluntary. See Hill v. Lockhart, 474 U.S. at 62 (White, J., concurring) ("The failure of an attorney to inform his client of the relevant law clearly satisfies the first prong of the Strickland analysis . . . , as such an omission cannot be said to fall within 'the wide range of professionally

12

competent assistance' demanded by the Sixth Amendment.") (quoting Strickland v. Washington , 466 U.S. at 690).

Thus, to prove that his plea was involuntary under Henderson (and, hence, satisfy the first prong of his ineffectiveness claim under Hill), it is not enough for Mr. Miller to show that his attorney failed to inform him of the depraved mind element of second-degree murder. Rather, he must also (1) show that the depraved mind element was a critical element of second-degree murder; (2) overcome the presumption that his attorney explained this element to him at some other time prior to his guilty plea; and (3) demonstrate that, prior to his guilty plea, he did not receive notice of this element from any other source.

First, we conclude that depraved mind–the requisite intent for a second-degree murder conviction–is a "critical" element of the offense. See Henderson , 426 U.S. at 647 n.18 ("[I]ntent is such a critical element of the offense of second-degree murder that notice of that element is required."); Gaddy v. Linahan , 780 F.2d 935, 945 (11th Cir. 1986) ("At the very least, due process requires that the defendant, prior to tendering a plea of guilty, receive a description of the 'critical elements' of the charged offense, such as the element defining the requisite intent.") . Moreover, in this case, an explanation of the depraved mind element was particularly necessary because the concept of

13

criminal intent "is a complex concept not readily understandable by a layman." See Gaddy, 780 F.2d at 945.

Second, Mr. Champion admits that the record does not contain any indication that Mr. Miller's counsel ever informed him of the depraved mind element. Although Henderson "presumes that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit," 426 U.S. at 647, in order to indulge such a presumption, there must exist some factual basis from which we could conclude that Mr. Miller's attorney had explained the depraved mind element to him. See United States v. Bigman, 906 F.2d 392, 395 (9th Cir. 1988) (concluding that record contained insufficient evidence from which court could indulge Henderson presumption). In the present case, there simply are no facts upon which we could base such a presumption. The court never inquired of Mr. Miller whether he understood the elements of the crime to which he was pleading guilty, nor did it ask Mr. Miller whether his attorney had explained these elements to him. In fact, Mr. Champion candidly concedes that "it is doubtful that any person who enters a guilty plea is recited the particular elements of the offense by [his] defense attorneys or any other persons. Rather, . . . it seems reasonable to presume petitioner was not so advised." Aple's Br. at 6. In this factual context, we cannot presume that Mr. Miller's attorney explained the

14

depraved mind element to him at any time prior to the plea.      See 2 LaFave &

Scott, Criminal Procedure  § 20.4, at 644 (characterizing several lower court

decisions that have "entertained such a presumption in order to defeat a

defendant's Henderson claim" as "highly questionable")   .

Finally, we must examine the record to determine whether Mr. Miller

received the requisite notice from a source other than his attorney.  The plea

hearing transcript reveals that the judge failed to explain the depraved mind

element to Mr. Miller.  Although telling, the absence of such an explanation does

not end our analysis.

In some cases, courts have concluded that the indictment or information

supplied the defendant with the necessary notice of the elements of the crime to

which he pleaded guilty.    See, e.g. , Marshall v. Lonberger   , 459 U.S. 422, 437-38

(1983); Worthen v. Meachum  , 842 F.2d 1179, 1183 (10th Cir. 1988),    overruled

on other grounds   , Coleman v. Thompson   , 501 U.S. 722 (1991).  However, in the

present case, the indictment or information (from the record, it is unclear which

charging document the State used) charged Mr. Miller only with first-degree

murder.  As in  Henderson , the formal charging document did not contain a charge

of second-degree murder.    See Henderson , 426 U.S. at 641-43.  Rather, it was

only at the plea hearing, moments before Mr. Miller entered his guilty plea, that

the State moved orally to amend the charging document to include a charge of

15

second-degree murder. Thus, because the indictment or information did not even contain a charge of second-degree murder, there is no way that this document could have provided Mr. Miller with notice that depraved mind was an element of this crime. Cf. Gaddy, 780 F.2d at 946 (granting evidentiary hearing to petitioner who had pleaded guilty to first-degree murder on grounds that "a more thorough explanation of the nature of the crime and its elements was required" than "the one-sentence indictment the prosecutor read to petitioner during the plea hearing").

In sum, the record contains no evidence that contradicts Mr. Miller's assertion that his attorney failed to inform him that depraved mind was an element of second-degree murder. The record is similarly devoid of evidence indicating that Mr. Miller learned of this element from any other source. Thus, Mr. Miller has satisfied the first prong of Hill v. Lockhart.

Under such circumstances, courts have often granted evidentiary hearings in order to determine whether petitioners had received the requisite notice–either from their attorneys or other sources–of the crimes to which they had pleaded guilty. See Bigman, 906 F.2d at 394-95 (remanding for evidentiary hearing where record failed to establish that habeas petitioner had received notice of elements of crime to which he had pleaded guilty); Burden v. Alabama, 584 F.2d 100, 102 (5th Cir. 1978) (same). However, under Hill v. Lockhart, before we can

16

grant Mr. Miller such a hearing, we must determine whether he has been prejudiced by his counsel's alleged error, i.e., whether there is a reasonable probability that, but for his counsel's alleged failure to inform him of the depraved mind element, Mr. Miller "would not have pleaded guilty and would have insisted on going to trial."    See 474 U.S. at 59.

**IV      Whether Counsel's Alleged Error Prejudiced Mr. Miller**

In his § 2254 petition, Mr. Miller alleges that he "would not have pleaded guilty had he known that the State was required to prove that his conduct evinced a 'depraved mind' in extreme disregard of human life." Rec. doc. 2, at 6a. Although Mr. Miller's claim would necessarily fail without such an allegation, see Hill, 474 U.S. at 60, this allegation alone is insufficient to demonstrate prejudice,  see United States v. Gordon  , 4 F.3d 1567, 1571 (10th Cir. 1993) ("[A petitioner's] mere allegation that, but for original counsel's failure to inform him . . . , he would have insisted on going to trial, is insufficient to establish prejudice."). Rather, in order to demonstrate prejudice, Mr. Miller must also show that, had he rejected the State's plea bargain, the outcome of the proceedings "likely would have changed."    See Hill, 474 U.S. at 59. Thus, we must determine whether it is likely that a jury would have acquitted him of second-degree murder.

17

Unfortunately, the factual record in this case is, at best, skeletal.  Other than the reading of a 30-word "Plea of Guilty and Summary of Facts" statement that Mr. Miller signed, the transcript of the plea hearing contains no testimony concerning the facts underlying the killing.  The passage in question, which comprises the entire factual record regarding the underlying crime, provides: "Defendant recalls being present and involved in a fight with deceased.  Co-defendant handed Defendant gun which he recalls firing once.  Witness[e]s would testify Defendant shot deceased.  Both parties were intoxicated."  Rec. doc. 9, Exh. C at 25;   accord id., Exh. D at 16.

The Oklahoma Court of Criminal Appeals has held that second-degree "depraved mind" murder (as opposed to second-degree felony-murder) consists of the following elements:

> (1)    death of a human;
>
> (2)    caused by conduct that was imminently dangerous to another person;
>
> (3)    the conduct was that of the defendant;
>
> (4)    the conduct evinced a depraved mind in extreme disregard of human life; and
>
> (5)    the conduct was not done with the intention of taking the life of any particular individual.

See Willingham v. State  , 947 P.2d 1074, 1081 (Okla. Crim. App. 1997),     cert. denied , 118 S. Ct. 2329 (1998).

As the magistrate judge accurately observed, the factual record in this case is sufficient to support a conviction of second-degree murder, as a reasonable jury could find that the facts as recited in Mr. Miller's plea statement established all five of the required elements of second-degree murder. See Rec. doc. 12, at 7; see also Willingham, 947 P.2d at 1081; Quilliams v. State, 779 P.2d 990, 991 (Okla. Crim. App. 1989) (upholding second-degree murder conviction where, after altercation between defendant and victim, defendant, who denied an intent to do more than wound, retrieved gun and shot and killed victim). However, under Hill v. Lockhart, whether a defendant could have been convicted of the crime to which he pleaded guilty is not the test. Rather, we must determine whether it is likely that a jury would have acquitted him of that crime. See Hill, 474 U.S. at 59.

In Oklahoma, "[h]omicide is manslaughter in the first degree . . . [w]hen perpetrated without a design to effect death, and in a heat of passion, but in a cruel and unusual manner, or by means of a dangerous weapon." Okla. Stat. tit. 21, § 711(2). The Oklahoma Court of Criminal Appeals has held that "[t]he elements of heat of passion are 1) adequate provocation; 2) a passion or emotion such as fear, terror, anger, rage or resentment; 3) the homicide occurred while the passion still existed and before a reasonable opportunity for the passion to cool; and 4) a causal connection exists between the provocation, passion and

homicide." Le v. State , 947 P.2d 535, 546 (Okla. Crim. App. 1997), cert. denied , 118 S. Ct. 2329 (1998).

The plea statement indicates that Mr. Miller killed his victim during or immediately after a fight between the two. This suggests that, had Mr. Miller chosen to go to trial, a reasonable jury could have found that he killed his victim in the heat of passion and, thus, found him guilty of first-degree manslaughter rather than second-degree murder. See Williams v. State , 513 P.2d 335, 338 (Okla. Crim. App. 1973) (ruling that defendant who shot his wife numerous times, allegedly during a fight, was entitled to manslaughter instruction because "[t]he jury might reasonably interpret the evidence to show that the initial firing of the gun was caused by a sudden and unexpected attempt to attack defendant with a pair of scissors and fired by the defendant while in a heat of passion"); Wood v. State , 486 P.2d 750, 752 (Okla. Crim. App. 1971) (where killing occurred during bar fight, court reduced defendant's sentence from murder to manslaughter and held that "homicide may be reduced from murder to manslaughter where the killing was done because the slayer believed that he was in great danger, even if he was not warranted in such belief or where the slayer although acting in self-defense was not himself free from blame").

Further, the signed plea statement also indicates that Mr. Miller was intoxicated at the time of the killing. Under Oklahoma law, a defendant may not

20

be convicted of murder where, at the time of the killing, he "was so intoxicated that his mental abilities were totally overcome and it therefore became impossible for him to form criminal intent." Crawford v. State , 840 P.2d 627, 638 (Okla. Crim. App. 1992). Thus, were Mr. Miller able to demonstrate that when he killed his victim, he was sufficiently intoxicated so "as to be totally unable to form an intent to kill, . . . [t]he homicide, under such circumstances, unless otherwise excusable, would amount to manslaughter in the first degree." See Williams , 513 P.2d at 339 (quotation omitted).

Moreover, in his § 2254 petition, Mr. Miller provided the following recitation of facts:

> [W]hen [the petitioner] arrived [at a party,] he witnessed the deceased and two other men stomping and beating another man . . . whom the petitioner recognized. . . . Petitioner . . . attempted to break up the fight and the deceased and the two other men turned on him and started hitting and stomping him. Shortly thereafter, the petitioner's nephews heard about the incident and came to his aid. The deceased and the two other [men] ceased fighting with the petitioner when his nephews arrived. . . . [A]fter one of [the petitioner's] nephews handed him a gun for his protection, the deceased started talking profoundly against [the petitioner] and started swinging a knife at him. The knife cut the petitioner severely several times across his upper body as he retreated into an open field. [P]etitioner asked the deceased to stop his assault . . . but the deceased kept on yelling . . . and lunged at him again with the knife. Petitioner, in an attempt to avoid any further injury[,] fired a single shot at the deceased['s] lower body area. The shot was fatal[,] striking the deceased in his chest.

21

Rec. doc. 2, at 6-6a.  In his petition, Mr. Miller emphasized "that he did not intend to kill the deceased but had aimed the gun at the deceased['s] lower body area."  Id. at 6.

Because no state or federal court conducted a hearing to develop the facts surrounding the killing, we do not know whether Mr. Miller's version of events is accurate.  However, Mr. Miller's recitation of the facts does not conflict with his signed plea statement.  In fact, it is entirely consistent with that statement.  And Mr. Champion has not offered any evidence that would cast doubt on Mr. Miller's version of the events.  Under these circumstances, we must treat the facts alleged in Mr. Miller's habeas petition as true.  See Williams v. Kaiser, 323 U.S. 471, 473-74 (1945) (Where no evidentiary hearing was held, and where "allegations contained in the petition are not inconsistent with the recitals of the certified copy of the sentence and judgment which accompanied the petition[,] . . . [w]e must assume that the allegations of the petition are true.");  see also Machibroda v. United States, 368 U.S. 487, 494-95 (1962) (concluding that district court was required to conduct evidentiary hearing in habeas case where prisoner's allegations "related primarily to . . . occurrences . . . upon which the record could . . . cast no real light").

If the allegations in Mr. Miller's habeas petition are true, Mr. Miller killed his victim:  1) after his victim had provoked him verbally, "stomped" him, and

22

cut him repeatedly with a knife; 2) while Mr. Miller was in fear for his life; and 3) in an attempt to wound the victim so as to prevent the victim from further assaulting and perhaps killing him. Moreover, the record also indicates that Mr. Miller was intoxicated at the time of the killing. However, without an evidentiary hearing, the court was unable to explore whether Mr. Miller's intoxication rendered him legally incapable of forming the requisite intent to support a second-degree murder conviction.

Accepting Mr. Miller's version of the events (which we must do here), we conclude that a reasonable jury would likely conclude that Mr. Miller was guilty of no more than first-degree manslaughter. See Williams, 513 P.2d at 338-39; Wood, 486 P.2d at 751-53. In fact, under Mr. Miller's recitation of the facts, a reasonable jury might even find him altogether innocent of any crime, on the ground that the shooting was a necessary act of self-defense. See Okla. Stat. tit. 21, § 643(3) ("[T]o use force or violence upon or toward the person of another is not unlawful . . . [w]hen committed . . . by the party about to be injured . . . in preventing or attempting to prevent an offense against his person[,] . . . provided the force or violence used is not more than sufficient to prevent such offense."); see also Townley v. State, 355 P.2d 420, 439 (Okla. Crim. App. 1960) ("Where one who has provoked a combat abandons or withdraws from it in good faith, . . . his right of self-defense is restored, and if thereafter he is pursued by his

23

adversary, he is justified or excused in killing him if necessary to save himself from death or great bodily harm.") (quotation omitted). Thus, Mr. Miller has met his burden under Hill v. Lockhart of demonstrating that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." See 474 U.S. at 59.

**CONCLUSION**

Until the district court has fully developed the factual record, it cannot properly resolve Mr. Miller's habeas petition. Accordingly, the court should not have dismissed this action. Rather, it should have granted Mr. Miller an evidentiary hearing and appointed counsel to represent him in this matter. See Swazo v. Wyoming Dep't of Corrections, 23 F.3d 332, 333 (10th Cir. 1994) (holding that habeas petitioners enjoy right to counsel when court determines that evidentiary hearing is required).

Accordingly, we hereby VACATE the district court's decision dismissing Mr. Miller's § 2254 petition and REMAND this matter so that the court may consider the merits of Mr. Miller's claim. On remand, the court should conduct an evidentiary hearing to determine whether, prior to Mr. Miller's guilty plea, he was ever provided with notice–either by his attorney or by some other source–of the depraved mind element of second-degree murder. If the evidence fails to

establish that Mr. Miller did receive such notice, the hearing should also explore whether there was a reasonable probability that, had Mr. Miller received such notice, he would not have pleaded guilty and would have instead insisted on going to trial.

The mandate shall issue forthwith.