**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 2 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

ROBERT DEE O'KANE,

Defendant - Appellant.

Nos. 98-3241
and 99-3080

(D. Kansas)

(D.C. No. CR-93-40007-02-DES)

**ORDER AND JUDGMENT** *

Before **ANDERSON** , **KELLY** , and **BRISCOE** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal.   See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is

therefore ordered submitted without oral argument.

Robert Dee O'Kane seeks a certificate of appealability which would enable

him to challenge the district court's denial of his motion, filed pursuant to 28

---

*This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

U.S.C. § 2255, to vacate, set aside, or correct his sentence. For the reasons discussed below, we deny O'Kane's request for a certificate and dismiss his appeal.

## BACKGROUND

Between 1990 and 1993, O'Kane and several accomplices conducted a series of armed bank robberies in Missouri and Kansas. After his arrest, O'Kane eventually admitted involvement in a total of 23 robberies. O'Kane entered into a plea agreement with prosecutors, under the terms of which he pled guilty to ten counts of armed robbery of a federally insured bank, in violation of 18 U.S.C. §§ 2, 2113(a), and 2113(d), and two counts of using and carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. §§ 2 and 924(c). The government agreed not to prosecute O'Kane for his involvement in the other 13 robberies.

The district court sentenced O'Kane to a term of 262 months' imprisonment on each of the ten robbery counts, with those sentences to be served concurrently. The court also sentenced O'Kane to terms of five years' imprisonment on each of the two firearms counts, with those sentences to be served consecutive to each other and to the ten concurrent robbery sentences. O'Kane appealed the sentence imposed by the district court, and we vacated the sentence and remanded the case

for resentencing.  United States v. Okane  , 52 F.3d 828 (10th Cir. 1995).  On remand, the district court imposed the identical sentence, but with additional explanation, and we affirmed the sentence.  United States v. Gieseke  , 1996 WL 387379 (10th Cir. July 11, 1996).

On October 6, 1997, O'Kane filed his § 2255 motion, essentially advancing three claims.  First, O'Kane argues that his counsel was ineffective because he did not challenge the government's alleged failure to prove that the banks involved were in fact insured by the Federal Deposit Insurance Corporation (FDIC), a statutory element of the crime charged.  See 18 U.S.C. § 2113(f).  Second, O'Kane argues that his counsel was ineffective because he did not challenge the government's alleged failure to demonstrate that the devices which he was charged with using and carrying were actually "firearms" within the meaning of 18 U.S.C. § 921(a)(3), a requirement for any violation of 18 U.S.C. § 924(c).  Finally, O'Kane argues that his counsel was ineffective for allegedly allowing him to be sentenced "to a term of imprisonment which exceeds an authorized statutory maximum."  I R. Tab 204, at 7.

On March 10, 1998, the district court denied O'Kane's motion, finding that his first two claims were precluded by implicit admissions in his plea agreement, and that his third claim failed because he had not been sentenced to a term of imprisonment in excess of the statutory maximum.  See I R. Tab 209.

On June 4, 1998, O'Kane telephoned the district court to inquire about the status of his case. He was informed that his motion had been denied and his case had been closed. At that point, he maintained that he had not yet received a copy of the district court's order disposing of his motion. While still on the telephone, O'Kane requested that a copy of the order be sent to him. On June 15, 1998, the district court received O'Kane's motion for extension of time in which to file an appeal, and on June 22, 1998, construing it as a motion filed under Fed. R. App. P. 4(b)(4), denied it because a "district court cannot . . . extend the period in which to file a notice of appeal beyond the thirty days provided for" in Rule 4(b). I R. Tab 212, at 4.

O'Kane, in Appeal No. 98-3241, timely appealed from the district court's order refusing to allow him an extension of time to file an appeal. In this appeal, he also challenged the district court's denial of his motion on the merits. We reversed the district court in part, holding that the district court had not addressed whether O'Kane's motion for an extension of time met the criteria set forth in Fed. R. App. P. 4(a)(6). United States v. O'Kane, No. 98-3241, slip op. (10th Cir. Jan. 7, 1999); I R. Tab 217. Because we do not have jurisdiction to hear untimely appeals, we declined to address the merits of O'Kane's appeal from the denial of his § 2255 motion until the district court made its Rule 4(a)(6) determination.

On remand, the district court held that the requirements of Rule 4(a)(6) were indeed met here, and accordingly reopened the time to file an appeal from the order adjudicating O'Kane's case on the merits. O'Kane, in Appeal No. 99-3080, then filed a timely notice of appeal.

Thus, the two consolidated appeals present the same issues. The portions of 98-3241 that remain, as well as 99-3080 in its entirety, both consist of a challenge to the district court's order denying O'Kane's motion on its merits.

## DISCUSSION

O'Kane phrases all three of his arguments challenging the district court's denial of his § 2255 motion as ineffective assistance of counsel claims. [1] To establish a claim of ineffective assistance of counsel, the defendant must show that his attorney's representation "fell below an objective standard of reasonableness," and that "the deficient performance prejudiced the defense."

---

[1] In his response brief below, O'Kane maintains that he is not merely arguing that his counsel was ineffective, but is raising other claims as well. See I R. Tab 208, at 2. We are required to construe the pleadings of pro se litigants liberally, see Haines v. Kerner, 404 U.S. 519, 520-21 (1972), and we will construe O'Kane's claims as ineffective assistance of counsel claims, despite his protestations. This is because O'Kane did not raise these issues on direct appeal, and, with the exception of ineffective assistance of counsel claims, see United States v. Galloway, 56 F.3d 1239, 1241 (10th Cir. 1995) (en banc), "[s]ection 2255 motions are not available to test the legality of matters which should have been raised on direct appeal," United States v. Cook, 997 F.2d 1312, 1320 (10th Cir. 1993).

Strickland v. Washington, 466 U.S. 668, 687, 688 (1984). The defendant bears the burden of establishing both deficient performance and prejudice. See Brecheen v. Reynolds, 41 F.3d 1343, 1365 (10th Cir. 1994).

With regard to O'Kane's first two claims of error, the district court held that because O'Kane pled guilty to the bank robbery and firearms charges, he had, in essence, "admitt[ed] all material facts alleged in the charge." United States v. Kelsey, 15 F.3d 152, 153 (10th Cir. 1994); see also United States v. Broce, 488 U.S. 563, 570 (1989) (stating that a guilty plea is "an admission that [the defendant] committed the crime charged against him" (citation omitted)). O'Kane, however, argues that his counsel failed to inform him that the government had to prove that the banks he robbed were federally insured, or that the government had to prove that the devices which he was charged with using and carrying were actually "firearms" within the statutory definition. O'Kane maintains that had he known that the government bore these burdens, he would not have pled guilty to the offenses. See I R. Tab 208, at 4.

The two-part test of Strickland "applies to challenges to guilty pleas based on ineffective assistance of counsel." Hill v. Lockhart, 474 U.S. 52, 58 (1985). In order to satisfy the performance portion of the Strickland test in the plea bargain context, the defendant must (1) show that the element of the crime which his attorney allegedly neglected to discuss with him was a critical element of the

crime; (2) overcome the presumption that his attorney explained this element to him at some other time prior to his guilty plea; and (3) demonstrate that, prior to his guilty plea, he did not receive notice of this element from any other source. Miller v. Champion, 161 F.3d 1249, 1255 (10th Cir. 1998). In order to satisfy the prejudice portion of this test, O'Kane "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59 (footnote omitted); see also Miller, 161 F.3d at 1253.

O'Kane's second claim fails the first portion of the Strickland test. Even assuming, arguendo, that possession of a "firearm," as defined in 18 U.S.C. § 921(a)(3), is a critical element of a firearm violation under 18 U.S.C. § 924(c), and that his attorney did not ever explain this element of the offense to him, the record demonstrates that O'Kane was aware that possession of a "firearm" was an element of this offense. The plea agreement executed by O'Kane states that O'Kane "admits his guilt . . . of . . . using a firearm in relation to the bank robbery of Fidelity Gage Center Bank . . . and . . . First Continental [Bank]." I R. Tab 214, Attachment. Thus, O'Kane himself was aware that the charge against him included the use of a firearm, and he signed a plea agreement admitting that he used a firearm in connection with two enumerated robberies. Therefore, O'Kane's second claim fails.

-7-

O'Kane's first claim, even if it could survive the performance portion of the <u>Strickland</u> test, founders on the prejudice portion of the test. As noted above, O'Kane must at least contend that he would have elected not to plead guilty had he known about this element of the offense. However, we have stated that a defendant's facial contention that he would have proceeded to trial is not enough; the defendant must also show that "the outcome of the proceedings 'likely would have changed.'" <u>Miller</u>, 161 F.3d at 1256-57 (quoting <u>Hill</u>, 474 U.S. at 59). O'Kane cannot make this showing. If O'Kane's counsel had required the government to present some evidence showing that the banks robbed by O'Kane were FDIC insured, the government could easily have done so. Indeed, O'Kane attaches to his appellate brief in this case correspondence he received, upon request, from the FDIC. On August 7, 1998, O'Kane sent a letter to the FDIC, requesting information about whether the banks he robbed were in fact FDIC insured banks. On September 16, 1998, the FDIC replied that "[t]hose banks were insured on the dates you indicated in your letter."[2] Appellant's Br.,

---

[2]O'Kane erroneously emphasizes one sentence in the FDIC's letter: "Federal deposit insurance does not cover loss of deposits due to bank robberies." Appellant's Br., Attachment, at 1. O'Kane interprets this to mean that because the FDIC refused to reimburse the banks for his robberies, the "deposits" he robbed were not insured, and therefore the government cannot prove this element of the crime. O'Kane misinterprets the statute. In order for the federal statutory requirements to be met, the bank robbed must be an "institution the deposits of which are insured by the [FDIC]." 18 U.S.C. § 2113(f). This means only that the

(continued...)

Attachment, at 1. Apparently, it would not have been difficult for the government to prove that the deposits of the banks robbed by O'Kane were generally insured by the FDIC. O'Kane cannot show that his counsel's performance was constitutionally deficient merely because counsel, at the plea negotiations, did not require the government to go through the motions of proving this seemingly evident element of the crime. O'Kane cannot bear his burden of showing that the outcome of the proceedings would have been different if his counsel had required the government to prove that the banks were FDIC insured.

O'Kane's third claim of ineffective assistance of counsel is that his counsel was ineffective because he failed to take issue with O'Kane's sentence on the bank robbery counts, which O'Kane alleges is longer than the statutory maximum. This claim was effectively disposed of by the district court in this case, and we adopt its disposition. The district court stated as follows:

> The defendant pled guilty to ten counts of armed bank robbery all in violation of 18 U.S.C. §§ 2113(a) and 2113(d). [Section] 2113(d)

---

[2](...continued)
bank's deposits must be generally insured against bank failure by the FDIC; this does not require that the FDIC insure individual robberies at that particular bank. See United States v. Bindley, 157 F.3d 1235, 1238-39 (10th Cir. 1998) (statutory element proved by testimony of bank teller that the bank was FDIC insured); United States v. Brunson, 907 F.2d 117, 118-19 (10th Cir. 1990) (statutory element proved by testimony of bank branch manager that the bank was insured by the FSLIC). Indeed, were O'Kane's interpretation of the statute correct, the statute would be entirely impotent, because the FDIC does not cover any losses stemming from individual bank robberies.

provides for a maximum imprisonment of twenty-five years. The defendant's sentence amounts to 21.8 years' imprisonment and four years' supervised release. The term of supervised release is not counted as imprisonment for purposes of the statutory maximum sentence. The sentencing guidelines treat "a term of supervised release to follow imprisonment" as a[n] independent element of a defendant's sentence, not encompassed in calculation of months of imprisonment. USSG § 5D1.1(a), 5D1.1(b). Even upon revocation of his supervised release, however, the defendant is only subject to a maximum of three additional years['] imprisonment, which, when added to 21.8 years, still falls short of the statutory maximum. See 18 U.S.C. § 3583(e)(3). Moreover, "[t]he sentencing guidelines plainly contemplate the imposition of terms of supervised release that, if added to the relevant term of imprisonment, would extend the total sentence well beyond the maximum number of months in the applicable guideline range." United States v. Gilbreath , 72 F.3d 139[, 1995 WL 739448, at *1] (10th Cir. [Dec. 14,] 1995). Defendant's counsel, therefore, had no basis to object to defendant's sentence on the grounds that it exceeded the statutory maximum.

I R. Tab 209, at 6-7. Thus, even if O'Kane's counsel had objected to O'Kane's sentence on the grounds that it exceeded the statutory maximum, that objection would almost certainly have been overruled. Therefore, O'Kane cannot show that he was prejudiced by his attorney's failure to make such an objection.

## CONCLUSION

For the reasons stated above, we conclude that O'Kane has failed to make a substantial showing of the denial of a constitutional right. See 28 U.S.C. § 2253(c)(2). Accordingly, we DENY O'Kane's request for a certificate of appealability and DISMISS his appeal.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge