**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 9 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

DAVID M. KORDELSKI,

       Petitioner-Appellant,

v.

LENORA JORDAN, * Warden, James
Crabtree Correctional Center,

       Respondent-Appellee.

No. 03-6080
(D.C. No. 01-CV-487-L)
(W.D. Okla.)

---

**ORDER AND JUDGMENT** **

---

Before **HENRY** , **MURPHY** , and **TYMKOVICH** , Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore

ordered submitted without oral argument.

---

\*     Lenora Jordan was substituted as the proper respondent in the report and
recommendation entered by the magistrate judge on May 17, 2002.

\*\*     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

In September 1998, petitioner-appellant David M. Kordelski was convicted by an Oklahoma state court jury of committing the crimes of possession of a controlled dangerous substance with intent to distribute after two felony convictions, possession of a controlled dangerous substance without a tax stamp after two felony convictions, and possession of drug paraphernalia. Petitioner was sentenced to serve consecutive prison terms of forty years, five years, and one year. The Oklahoma Court of Criminal Appeals (OCCA) affirmed petitioner's convictions and sentences on direct appeal. Pursuant to 28 U.S.C. § 2254, petitioner subsequently filed a petition for a writ of habeas corpus in the United States District Court for the Western District of Oklahoma. The district court denied the petition, and petitioner then filed the instant appeal in this court.

Pursuant to 28 U.S.C. § 2253(c)(1)(A), we granted petitioner a certificate of appealability (COA) with respect to two issues:

> 1) Proposition II, "the state trial court denied Mr. Kordelski due process of law when it allowed the prosecutor to engage in misconduct by failing to provide exculpatory material as required by *Brady v. Maryland* , [373 U.S. 83 (1963)]" and

> 2) Proposition IV, "Mr. Kordelski was denied due process when the state trial court failed to sustain a motion to quash and request for remand when the amended information [changed] the range of punishment [and] the amendment had not been furnished to defense counsel."

Order filed October 20, 2003, at 1-2. We conclude that petitioner has failed to establish that he is entitled to habeas relief based on either of these issues.

Accordingly, we affirm the district court's denial of habeas relief on the issues on which we granted a COA, and we deny a COA on all of the other issues raised by petitioner.

## I.

On December 4, 1996, four police officers from the Oklahoma City Police Department were dispatched to investigate a possible drug transaction that was taking place in a motel parking lot. At the time, other police officers were conducting surveillance of the parking lot, and they reported the possible drug transaction after observing suspicious activity. The four dispatched officers subsequently arrived at the parking lot in two unmarked police vehicles, with Officers French and Michael riding in one of the vehicles and Officers Bennett and Galyon riding in the other vehicle.

At the time the four dispatched officers arrived at the parking lot, the suspects in the possible drug transaction were leaving the parking lot in two separate cars. Petitioner was one of the suspects, and he was driving one of the cars, along with a woman passenger named Rhonda Jones. The other car was being driven by a woman named Tina Duello, along with a passenger named Donna Garth. The dispatched officers proceeded to pull over the car that petitioner was driving, while the car being driven by Tina Duello was pulled over by other officers.

According to his testimony at petitioner's trial, as the car containing petitioner and Jones was coming to a stop, Officer French "observed a black object to fly out of the passenger side window of the car into the grass on the side of the roadway." Trial Tr., Vol. 2, at 121. Officer Michael also testified that he "saw the driver, who was later identified as Mr. Kordelski, lean to his right and [he] saw an object fly from the vehicle." *Id.* at 182. Both Officers French and Michael also testified, however, that they did not see petitioner throw the black object out of the car. *Id.* at 155, 187-88.

After the cars had come to a stop, Officer French retrieved the black object, and he identified it at trial as being a "wallet-type object." *Id.* at 121. Officer French testified that he opened the wallet after he retrieved it, and he found that it contained a tubular cannister, two envelopes, and two plastic baggies containing white and tan powdery substances. *Id.* at 131-32. He also found that it contained two spoons, two small knife-like objects, an empty film cannister, several empty plastic baggies, and several syringes. *Id.* at 133-35. No additional drugs or paraphernalia were found on the person of Mr. Kordelski or in the car, although the officers found a small plastic set of scales in Jones' purse. *Id.* at 148.

The dispatched officers then transported petitioner and Jones to a local police station, and petitioner was placed under arrest and Jones in investigative detention. *Id.* at 137-38. Upon arriving at the station, Officer French conducted a

field test on a sample from the powdery substances that were found in the wallet, and the sample tested positive for a narcotic. *Id.* at 138. Officer French and Officer Bennet then took petitioner into a small room, and they read him his *Miranda* rights. *Id.* After reading petitioner his *Miranda* rights, the officers inquired as to whether petitioner was willing to speak with them and whether he would agree to sign a written waiver of his *Miranda* rights. *Id.* at 139-40. According to the trial testimony of both Officer French and Officer Bennett, although petitioner refused to sign a written waiver, he agreed to speak with them, *id.* at 139-40, 203-04, and he told them that he had paid an individual named "Donna" $350.00 on the previous night to purchase an unspecified amount of methamphetamine, *id.* at 140, 205. Petitioner also admitted that he had gone to the motel parking lot to pick up the methamphetamine that the officers found in the wallet. *Id.* Petitioner insisted, however, that Jones did not know anything about the methamphetamine. *Id.* at 141, 205. Petitioner was then taken into custody on the charges referenced above. No charges were ever filed against Jones or the occupants of the other vehicle.

At petitioner's trial, the prosecution called Officers French, Michael, and Bennet as witnesses to testify regarding petitioner's arrest and confession. The prosecution also called Matthew Scott, a forensic chemist with the Oklahoma City

Police Department. Scott testified that there were 7.2 grams of methamphetamine in the powdery substances that were recovered from the wallet. *Id.*, Vol. 3, at 22.

Petitioner called only one witness in his defense, and that was Tina Duello, the driver of the other car. At the time of her testimony, Duello was serving time in an Oklahoma state prison on charges that were unrelated to this case, and the jury was informed of that fact. *Id.* at 33-34. As to the events of December 4, 1996, Duello testified that, after she and Donna Garth arrived at the motel parking lot, Rhonda Jones got out of the other vehicle and came over and got into the back seat of their vehicle. *Id.* at 34-35. According to Duello, "[Jones] got in with a black billfold and passed Donna some money and Donna passed her a little baggie with some powder in it, white powder or something." *Id.* at 35. Duello further testified that petitioner never came over to the vehicle. *Id.* at 36.

In addition to presenting the testimony of Duello, petitioner's trial counsel attempted throughout the trial and in his closing argument to cast doubt on the veracity of the police officers' testimony regarding petitioner's confession. As noted above, despite the testimony of Duello and petitioner's counsel's attempts to challenge the confession testimony, the jury found petitioner guilty of the crimes of possession of a controlled dangerous substance with intent to distribute after two felony convictions, possession of a controlled dangerous substance

without a tax stamp after two felony convictions, and possession of drug

paraphernalia .

## II.

### A. AEDPA Deference.

> The nature and extent of our review of [a state prisoner's] conviction are dictated by the [Antiterrorism and Effective Death Penalty Act (AEDPA)]. Under 28 U.S.C. § 2254(d) (2000), federal habeas review of state convictions is limited when the state courts have adjudicated a claim on the merits. As to such claims, the federal courts can grant a writ of habeas only if the state adjudication of the claim (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1); or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2).

*Cook v. McKune* , 323 F.3d 825, 829 (10th Cir. 2003). This limitation on our

review is known as "AEDPA deference."

As explained below, the OCCA adjudicated the merits of the claims at issue

in this appeal. As a result, we must apply the AEDPA deference standards to

determine if petitioner is entitled to habeas relief. "In doing so, we review the

district court's legal analysis of the state court decision de novo." *Allen v.

Mullin* , 368 F.3d 1220, 1234 (10th Cir. 2004).

### B. Alleged *Brady* Violations.

Petitioner claims the prosecution violated his due process rights by failing

to produce exculpatory materials as required by *Brady v. Maryland* , 373 U.S. 83

(1963).  Before addressing petitioner's *Brady* claim, we admonish counsel for petitioner for submitting a woefully deficient opening brief pertaining to this claim.  Specifically, in petitioner's opening brief, counsel refers in conclusory fashion to "key police reports" and "witnesses names," but he failed to make any effort to describe what police reports and witnesses he is referring to. *See* Aplt. Br. at 7-9.  Counsel also failed to provide any substantive arguments explaining why these materials are exculpatory and material under *Brady*.  Counsel's brief does not meet the standards for appellate briefing in this circuit, *see* Fed. R. App. P. 28(a)(9), and we warn counsel that he may be subject to sanctions in this court if he submits a brief of such poor quality in any future appeals.  We also note that our assessment of this appeal has been hampered by the fact that petitioner's counsel failed to file a brief after we granted petitioner a COA and respondent filed a brief in response to the COA order.

Despite the failures of petitioner's counsel, we have carefully reviewed the record in this case, and, based on that review, it is evident that petitioner's *Brady* claim has two components.  First, petitioner claims that the prosecution violated *Brady* by failing to produce police reports regarding interviews of Jones and Duello that were conducted by the police on December 4, 1996 after Jones and Duello were transported to the police station. *See* Aplee. Supp. App. at 88-91. Second, petitioner claims that the prosecution violated *Brady* by failing to provide

him with: (1) the names of the police officers who were involved in the initial surveillance of the motel parking lot; (2) the names of the police officers who were involved in the stop of the vehicle in which Duello and Garth were riding; and (3) any police reports that were prepared by these other officers.

Petitioner asserted both components of his *Brady* claim in his direct appeal to the OCCA. *Id.* at 71-72. Although the OCCA did not specifically address the separate components of petitioner's *Brady* claim, the OCCA rejected petitioner's *Brady* claim on the merits, concluding that petitioner had "failed to show how the absence of this evidence denied him a fair trial or affected his strategy." *Id.* at 20. Because they raise different issues relating to the application of 28 U.S.C. § 2254, we need to analyze the two components of petitioner's *Brady* claim separately.

### 1. Jones and Duello Interview Reports.

As this court has previously recognized,

> *Brady* [, 373 U.S. at 87] provides that the State's suppression of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment. . . . This is so irrespective of the prosecution's good or bad faith. *See Brady*, 373 U.S. at 87 . . . . Thus, to establish a *Brady* violation, a habeas petitioner must show that (1) the prosecutor suppressed evidence; (2) the evidence was favorable to the defendant as exculpatory or impeachment evidence; and (3) the evidence was material. . . . Generally, evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.

*Knighton v. Mullin*, 293 F.3d 1165, 1172 (10th Cir. 2002) (quotations omitted).

We have also "assumed, without deciding, that the government's disclosure of favorable evidence to the defense at trial could violate *Brady*." *Id.* at 1173 n.2. In such cases, the materiality requirement still applies, and the "materiality question . . . is . . . whether there is a reasonable probability that the outcome of [the trial] would have been different had the State disclosed [the] information earlier." *Id.* at 1172-73. "We make this determination in light of the record as a whole," and "[w]e ultimately measure the materiality of the belatedly disclosed information collectively." *Id.* at 1173; *see also United States v. Scarborough*, 128 F.3d 1373, 1376 (10th Cir. 1997) (noting that, "[w]hile we strongly disapprove of delayed disclosure of *Brady* materials, that alone is not always grounds for reversal. As long as ultimate disclosure is made before it is too late for the defendant[] to make use of any benefits of the evidence, Due Process is satisfied.") (quotation omitted).

In this case, the record establishes: (1) that the prosecution disclosed the existence of the Jones and Duello interview reports during petitioner's trial; (2) that petitioner's trial counsel relied on the Jones report to cross-examine Officer Michael, the author of the report, during the prosecution's case-in-chief; and (3) that petitioner's trial counsel was given an opportunity to review the Duello report prior to conducting his redirect examination of Duello. *See* Trial

-10-

Tr., Vol. 2, at 88-91, 193-94, 196, 198-99; Vol. 3, at 52-53, 57-58. Thus, this is not a situation where the alleged *Brady* material was completely suppressed by the prosecution. As a result, the materiality issue is "whether there is a reasonable probability that the outcome of [the trial] would have been different had the State disclosed this information earlier." *Knighton*, 293 F.3d at 1173.

The magistrate judge concluded that petitioner had failed to make a sufficient materiality showing with respect to either the Jones or the Duello reports, and we agree with the magistrate judge's analysis. First, the only potentially exculpatory evidence in the Jones report is her statement that "she did not see [petitioner] with the black leather Harley Davidson wallet earlier or at any time." Aplee. Supp. App. at 88. As the magistrate judge found, "Jones' statement does not give rise to a reasonable probability of a different result. Moreover, Petitioner does not offer any argument as to how disclosure at trial, as opposed to during the discovery phases, prejudiced his case." Aplt. App. at 8. In addition, petitioner's trial counsel questioned Officer Michael about Jones' statement during his cross-examination of Officer Michael, and Officer Michael confirmed that Jones made the statement. *See* Trial Tr., Vol. 2, at 198-99. Second, we have not been able to discern any exculpatory value with respect to

the Duello report, [3] and we thus agree with the magistrate judge that "the evidence contained in the [Duello] report does not satisfy the materiality requirement." Aplt. App. at 9. Accordingly, we conclude that the OCCA's adjudication of petitioner's *Brady* claim pertaining to the Jones and Duello reports was not contrary to or an unreasonable application of Supreme Court precedent.

## 2. Identities of the Other Police Officers.

The magistrate judge rejected the second component of petitioner's *Brady* claim, concluding that petitioner had failed to show how the identities of the other police officers were "either material, exculpatory or of impeachment value." Aplt. App. at 10. We agree with the magistrate judge's analysis, and we also conclude that petitioner waived the second component of his *Brady* claim by failing to request an evidentiary hearing in the district court proceedings.

During petitioner's trial, his trial counsel argued before the trial judge that the other officers could confirm Duello's trial testimony that it was Jones, and not petitioner, who got into the Duello/Garth vehicle to purchase the drugs. *See* Trial Tr., Vol. 3, at 77, 127. Counsel also argued that the other officers could confirm

---

[3]    To the contrary, the Duello report is inculpatory, as it states: (1) that the police found a pound of red phosphorous (a material used to make methamphetamine) in the Duello/Garth vehicle; (2) that Duello told the police that she had purchased the red phosphorous; and (3) that Duello told the police that she had initially intended to sell the red phosphorous to petitioner. *See* Aplee. Supp. App. at 90.

that either Garth or Jones were working for the police at the time of petitioner's arrest. *Id.*, Vol. 1, at 17-18. Petitioner's trial counsel had no evidence to support these arguments, however, and there is likewise no supporting evidence in the record before this court.

Given the lack of supporting evidence, petitioner's *Brady* claim pertaining to the identities of the other officers is based on pure speculation, as there is no evidence in the record establishing who the other officers were or what they would have testified to if they had been called as witnesses at petitioner's trial. It was petitioner's burden to develop an evidentiary record in the district court to support his *Brady* claim, and the only way to satisfy that burden was to request an evidentiary hearing and make the showings required by 28 U.S.C. § 2254(e)(2). [4] Petitioner failed to request an evidentiary hearing during the district court

---

[4] Under § 2254(e)(2), if a district court determines that a state habeas petitioner failed to develop the factual basis of a claim in the underlying state-court proceedings, then the court must deny a request for an evidentiary hearing unless the petitioner can establish that one of the two exceptions set forth in § 2254(e)(2) applies. *See Miller v. Champion*, 161 F.3d 1249, 1253 (10th Cir. 1998). On the other hand, if the court determines that the petitioner diligently sought to develop the factual basis underlying his habeas petition, but a state court prevented him from doing so, then the petitioner "is entitled to receive an evidentiary hearing so long as his allegations, if true and if not contravened by the existing factual record, would entitle him to habeas relief." *Id.* In this case, however, because petitioner did not request an evidentiary hearing, the district court did not have an opportunity to apply § 2254(e)(2).

-13-

proceedings, however, and we therefore conclude that he has waived the second component of his *Brady* claim.

**C. Amended Information.**

The original information filed against petitioner stated that he was previously convicted of two counts of possession of a controlled dangerous substance in case No. CFR-87-4010. *See* State R., at 3-4. This was a mistake, and, prior to petitioner's trial, the prosecution filed an amended information that stated that one of the convictions in case No. CFR-87-4010 was for the crime of possession of stolen property. *Id.* at 41. Petitioner claims the prosecution failed to provide him with notice of the amended information prior to his trial, and that "the result of the last-minute amendment was to increase the minimum punishment from four to twenty years." Aplt. Br. at 9. In addition, petitioner claims he "was never given an opportunity to enter a plea to th[e] amended information." *Id.*

Although the sufficiency of an information is primarily a question of state law, *Tapia v. Tansy*, 926 F.2d 1554, 1560 (10th Cir. 1991), "[a] charging instrument may violate the Sixth Amendment by failing to provide a defendant with adequate notice of the nature and cause of the accusations filed against him," *Johnson v. Gibson*, 169 F.3d 1239, 1252 (10th Cir. 1999). Moreover, "[i]t is axiomatic that a conviction upon a charge not made or upon a charge not tried

-14-

constitutes a denial of due process." *Jackson v. Virginia*, 443 U.S. 307, 314 (1979).

On direct appeal, the OCCA rejected petitioner's challenge to the amended information, concluding that "the amended information did not result in any prejudice to [petitioner]." Aplee. Supp. App. at 57. The magistrate judge agreed with the OCCA's analysis, and she summarized the evidence in the record pertaining to this issue as follows:

> At trial, Petitioner's counsel objected to the Amended Information stating that a copy had not been provided to him. The record indicates the effect of the correction to the Amended Information was to change Petitioner's sentence range from four years to life . . . to a range of twenty years to life . . . . Petitioner's counsel claimed prejudice asserting that Petitioner had turned down a plea of fifteen years and that further plea negotiations would have been pursued had the correct minimum punishment been known. Tr. Vol. 3, 122-23.

> The state responded that the plea offer of fifteen years remained open to Petitioner immediately prior to trial during discussions with Petitioner's counsel about the range of punishment as reflected in the Amended Information. Tr. Vol. 3, 124. Indeed, it was these discussions that led Petitioner's counsel to become aware of the Amended Information. Id. at 124-25. The record reflects the plea offer was rejected even with knowledge of the increase in the minimum punishment resulting from the Amended Information. Id. at 124.

Aplt. App. at 16.

The district court determined that "[t]he Magistrate Judge properly found that the record reflects that the plea offer was rejected by petitioner even with

-15-

knowledge of the increase in the minimum punishment resulting from the Amended Information." *Id.* at 26. We agree, and we quote the following colloquy between the parties' trial counsel to support the magistrate judge's analysis:

> Mr. Niemeyer [counsel for respondent]: As far as entering into other plea negotiations, I talked to Mr. Shaeffer Monday in the hall prior to trial, and told him that the offer of 15 would still be open. He told me his client would take nothing less than probation . . . .
>
> Mr. Shaeffer [counsel for petitioner]: Judge, let me add just one little bit in response to that. Mr. Niemeyer is correct in regards to our conversation. It was not until after that conversation when Mr. Niemeyer made the statement that my client was looking at not less than 20 years that caused me to go check out the court file . . . to see how he was coming up with that . . . .

Trial Tr., Vol. 3, at 124-25.

## III.

For the foregoing reasons, we AFFIRM the district court's denial of habeas relief on the issues on which we granted a COA. We DENY a COA on all of the other issues raised by petitioner.

ENTERED FOR THE COURT
PER CURIAM

-16-