No. 42,186

STATE OF KANSAS, *Appellee,* v. OMAR AMOS JONES, JR., *Appellant.*

(357 P. 2d 760)

Opinion filed December 10, 1960.

Appellant was on the briefs *pro se.*

*James B. Flack,* assistant county attorney, argued the cause, and *John Anderson, Jr.,* attorney general, *Robert Hoffman,* assistant attorney general, and *Robert J. Foster,* county attorney, were with him on the briefs for the appellee.

The opinion of the court was delivered by

Robb, J.: This is an appeal in a criminal prosecution from the trial court's order overruling defendant's motion for new trial and judgment entered.

Defendant was charged with the commission of the crime of robbery in the first degree under G. S. 1949, 21-527. The trial court appointed Charles W. Thompson, a regularly practicing, competent, and well-qualified attorney of Wyandotte county to represent defendant and it may be well to note here that, as reflected in the record received from both parties to this appeal, defendant was ably represented throughout the trial which lasted for the greater portion of two days.

On March 17, 1960, the jury returned a verdict finding defendant guilty of robbery in the first degree and on March 22, 1960, defendant filed a motion for new trial. This motion was overruled on April 2, 1960. The trial court then inquired of defendant and his counsel whether they knew of any legal reason why sentence should not be imposed upon defendant and the court found none. Evidence of a prior felony conviction and sentence on October 18, 1956, to the Missouri State Penitentiary at Jefferson City for two years was heard along with a request by the state for a double penalty under the habitual criminal act (G. S. 1949, 21-107a) of the sentence prescribed in G. S. 1949, 21-530 for robbery in the first degree. The trial court admitted and considered the previous conviction, granted the request and sentenced defendant to the state penitentiary.

From the record the salient facts, briefly stated, are that on October 8, 1959, near Forty-seventh and Parallel streets in Kansas City, Wyandotte county, at about 1:30 a. m., Ernest Cooney, the victim of the robbery, was driving north on Forty-seventh street and saw two young men, later found to be defendant and Robert Charles Collins, silhouetted by the headlights of their stalled car. It was raining and Cooney stopped to offer assistance and transportation to their homes. They directed Cooney to a place approximately two blocks south of Quindaro Boulevard at about Fourteenth street in Kansas City, Wyandotte county. One of the "boys" got out of the front seat of the car, got into the back seat to get his floor mats, reached around and stuck a sharp object against Cooney's neck and told him to "freeze." Cooney moved

his neck a little and the sharp object "went in" so he froze. The other "boy" got Cooney's billfold, which contained from $12.00 to $20.00, and took the money but upon request of Cooney did not take the billfold. They threw Cooney's keys behind his car and ran. Later the same day at police headquarters Cooney identified both defendant and Collins and when he testified at the trial he pointed to defendant as one of the young men who had committed the offense.

Eli Yovetich, Kansas City, Kansas, police detective, was sent to the scene where he saw the disabled "dark blue over light blue" four door 1952 or 1953 Ford automobile from which the two floor mats put into Cooney's car had been taken. No license plates were on the car but a check stub was found upon which appeared defendant's name.

William Pickering, another detective, produced the check stub referred to by detective Yovetich which had been found in the glove compartment of the Ford.

Robert Charles Collins, who was charged in the information as a co-defendant with defendant here, had asked for and was granted a severance for purposes of trial. He testified for the state that he had been in Cooney's car at the time and place in question. He further testified that defendant put his arm around Cooney's neck and got his billfold. Then on redirect examination Collins answered that he had made a written statement to the police, had signed it at the end, and was about to testify to his initials in the middle of a page when defendant's appointed counsel made a timely and appropriate objection which not only kept Collins' statement out of the evidence but stopped any further examination regarding it.

Detectives Lawrence Fee and William Grable relieved Yovetich and Pickering and thereby became the arresting officers in the case. Fee testified that during questioning he and Grable advised both Collins and defendant, who was talked to first, of their constitutional rights. Defendant implicated Collins by stating it was Collins who got into the back seat and held Cooney; that Cooney then gave defendant his billfold. Defendant and Collins made signed written statements and corroborated Cooney's identification. Grable related voluntary statements made by defendant wherein he said that "he split the money." Defendant's statement generally corroborated the other testimony above set out and de-

fendant also stated that "Collins grabbed the man around the neck and when I saw what was happening I grabbed the man's billfold and floor mats and got out."

All witnesses identified defendant either as one of the two young men who committed the robbery, or as one of the young men Cooney saw and identified at police headquarters.

Collins had entered a plea of guilty to second degree robbery and received a suspended sentence which matter will be discussed later herein because defendant raises a question in regard thereto.

Defendant's first contention of error is that the trial court erred in refusing to grant him a new trial and thus prejudiced and violated constitutional rights guaranteed him by the federal constitution, amendment 14, § 1, and by the bill of rights of our state constitution. A careful examination of the records shows that defendant had able counsel, that the trial court extended a constant effort to assure defendant not only a fair trial but at all times throughout the trial endeavored to give defendant every possible advantage. The record reflects defendant had a fair trial and that his rights not only were not prejudiced but, on the contrary, were fully protected. (*State v. Dodd*, 156 Kan. 52, 55, 131 P. 2d 725; *State v. Stubbs*, 186 Kan. 266, 273, 349 P. 2d 936.)

Mr. O. P. Calhoon, a juror who wore sun glasses, was heard to snore during the taking of testimony and a short recess was announced so the juror could get awake. During the final argument of the state the same juror again dozed off. Defense counsel promptly called attention to the juror's falling asleep but lodged no objection and did not move for a mistrial. Both parties cite *State v. King*, 101 Kan. 189, 194, 165 Pac. 665, which involved a murder conviction by a jury and where, as shown in the hearing on a motion for new trial, a member of the jury went to sleep or dozed during the trial. The trial court spoke to and admonished that juror at the time. The juror there testified he had dozed for only a second or two and thought it was the only time he had done so during the trial; he believed he had not missed any of the testimony. In that instance the trial court concluded the defendant's rights were not prejudiced and this court on review did not think the matter of sufficient importance to call for further comment. Misconduct of a juror is in the first instance a question for the trial court and when a motion for new trial is overruled it is thereby determined ·that the irregularity charged was not

prejudicial to the substantial rights of the defendant. (*State v. Lammon,* 153 Kan. 822, 826, 113 P. 2d 1052.) Defendant fails to show that his substantial rights were so prejudiced by the conduct of this juror that a new trial should be granted.

The next claim of error is in regard to questions directed to Collins by the trial court after the state and defense counsel apparently had finished their examination. The court's questions and Collins' answers referred to the reduction of the charge against Collins to second degree robbery, his plea of guilty to the reduced charge with a suspended sentence for two years, and certain testimony which merely corroborated that of other witnesses, and defendant's written confession. The first case to come to our attention is *State v. Keehn,* 85 Kan. 765, 118 Pac. 851, where the court held:

"The purpose of a trial in a criminal case is to ascertain the truth of the matters charged against the defendant, and it is a part of the business of the trial judge to see that this end is attained. He is a vital and integral factor in the discovery and elucidation of the facts, and whenever in his judgment the attorneys are not accomplishing the full development of the truth it is not only his right but it is his duty to examine and cross-examine the witnesses. The presumption is that this liberty will be honorably and impartially exercised in the interest of justice, and in this case it was not abused by the trial judge." (Syl. ¶ 4.)

After setting out the trial court's questions and answers thereto this court, in the opinion in the Keehn case, stated:

"Here again the unmistakable purpose of the court was the laudable one of ascertaining what this witness knew." (p. 782.)

Without going into the lengthy colloquy between the trial court and counsel regarding the court's examining of Collins, from the questions and from the trial court's explanation, it clearly appears this was done in an effort to assist defendant and, as the trial court explained, was also done for the purpose of clearing up any questions in the minds of the jurors concerning Collins' testimony on direct examination. A number of cases where the trial court examined a witness were cited and discussed in *State v. Miller,* 127 Kan. 487, 490, 274 Pac. 245. Two additional cases wherein the trial court went far beyond the trial court in our present case are *State v. Winchester,* 166 Kan. 512, 517, 203 P. 2d 229, and *State v. Bean,* 179 Kan. 373, 377, 378, 295 P. 2d 600. While adhering to the rule above quoted from the Keehn case, this court in those two particular instances set out their distinguishing features and held

there had been an abuse of discretion. Here, as already stated, the purpose of the trial court in examining Collins was to assist the defendant and to answer any possible questions in the minds of the jurors concerning Collins' testimony.

The record does not support defendant's next contention that reference to Collins' written confession was prejudicial to defendant. This statement was kept out of the evidence by objections on the part of defendant's alert counsel and reference in the arguments of the state could only have referred to Collins' oral testimony because that was the only statement by Collins which was in the record. This conclusion is supported by defendant's longhand abstract filed herein.

Defendant's complaint that the trial court erred by failing to instruct the jury on second and third degree robbery is without merit because the one distinguishing characteristic between the statutes (G. S. 1949, 21-527, first degree robbery; G. S. 1949, 21-528, second degree robbery) is that under 21-527 the property is delivered and suffered to be taken through fear of immediate injury while under 21-528 it is delivered through fear of injury to be inflicted at some future time (*State v. Stoffel,* 48 Kan. 364, 29 Pac. 685); and finally, G. S. 1949, 21-529, regarding third degree robbery shows a greater difference because it includes an element of extortion through verbal, written or printed communication, etc. An examination of the instructions included in the state's counterabstract (without repeating them verbatim herein, and as slightly changed by the trial court to satisfy some objections made by defendant's counsel) shows they fully, impartially and fairly covered the law of the case. We conclude that a reversal or the granting of a new trial is not required on this point.

The testimony of the arresting officers fully disclosed they explained to defendant at their first conversation with him wherein he implicated Collins, as well as later, that anything he said could and would be used against him in court and he did not have to answer any questions or say anything. There was also evidence that his right to counsel was fully explained to him. All this was found by the trial court along with the identification of the scrivener of defendant's written and signed confession. (*State v. Streeter,* 173 Kan. 240, 242, 243, 245 P. 2d 1177.)

Defendant's specifications of error involve the facts and in his last one he contends there was no evidence to sustain the jury's

verdict. If ever there was a case where an abundance of evidence to support a verdict was shown, this certainly is that case. Cooney's direct evidence and definite identification of defendant would have been sufficient to support the verdict, but there was much more in addition, and the trial court was correct in its independent approval of the verdict. The record before us indicates nothing which would justify a reversal. (*State v. Germany*, 173 Kan. 214, 226, 245 P. 2d 981.)

Other authorities cited have been considered but their application is not feasible or logical herein because they cover entirely different questions.

The judgment is affirmed.