Melvin Sherman **RANDLEMAN**, Appellant,

v.

The **STATE** of Oklahoma, Appellee.

No. F–75–778.

Court of Criminal Appeals of Oklahoma.

July 2, 1976.

Rehearing Denied July 21, 1976.

Stubbs, Stiner & Pace, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., for appellee.

## MEMORANDUM OPINION

BLISS, Judge:

Appellant, Melvin Sherman Randleman, hereinafter referred to as defendant, was charged, tried and convicted in the Oklahoma County District Court, Case No. CRF–75–226, for the offense of Robbery with Firearms in violation of 21 O.S. Supp.1973, § 801. His punishment was fixed at a term of imprisonment of fifteen (15) years and from this judgment and sentence, a timely appeal has been perfected to this Court.

The State's first witness at trial was Annis Wilson who testified she was employed at a 7–11 Store located at 3113 South Pennsylvania in Oklahoma City, and was so employed on the 28th of December, 1974, when at approximately 6:50 P.M., while talking on the telephone she observed an individual with a rifle walking down the sidewalk. She related this observation to her telephone party whereafter the individual entered the store and upon asking the individual if he was serious, the individual said . . . "dead serious, hang-up, I want your money." She complied with the individual's request for fear of her life and thus she put approximately $100.00 contained by the store's two (2) cash registers into a paper bag and gave it to the individual. During this time she observed a vehicle arrive in front of the 7–11 whereafter the individual left. She identified the defendant in court as the individual who robbed the store on the 28th of December, 1974. She also testified that she had occasion to view a line-up at the Oklahoma City Police Station some three (3) weeks following the robbery at which time from the individuals in the line-up she identified the defendant as the one who had robbed

the 7–11 Store on December 28th. On cross-examination she testified that at the time of the robbery the defendant was wearing blue denim trousers and a knee length all-weather coat. She also stated that at the time of the robbery, the defendant appeared to be 5′3″ or 5′4″ and approximately 130 pounds and that he had long hair. She stated she gave this description to the police upon their arrival some twenty (20) minutes after the robbery.

Aaron L. Cummings testified that on the 28th of December, 1974, at approximately 6:50 P.M., he and his wife, Barbara Cummings, while proceeding to visit his wife's father in Moore, Oklahoma, stopped at a 7–11 Store located at 3113 South Pennsylvania. Upon stopping and proceeding to enter the store he observed the woman inside the store talking on the telephone and an individual with a rifle sticking out from beneath a coat walking down the sidewalk. He proceeded back to his car whereafter he later saw the same individual hold the lady at rifle point inside the store. He then proceeded to a nearby laundromat to call the police whereafter he then observed the individual again walking towards them. He identified in court, the defendant as the individual he had observed upon that evening. He also stated the defendant that evening carried a brown paper bag and that upon the defendant approaching him, the defendant apparently began pulling the rifle out from beneath his coat at which time he and his wife proceeded down the street to try and get away from the defendant. He also testified that the only subsequent contact with the defendant was at a line-up at the police station a few weeks after the robbery.

Claude Shubert testified he was employed with the Oklahoma City Police Department, assigned to the Robbery-Homicide Division, and that he participated in the investigation of the December 28th robbery of the 7–11 Store located at 3113 South Pennsylvania. He testified that as a result of that investigation he contacted

Miss Wilson on or about the 16th day of January, 1975, and carried with him a group of mug shots. He also took the same group of photographs to the Cummings and pursuant to these conta_ts he issued a pick-up for the defendant. The State then rested.

Defendant took the stand to testify in his own behalf and categorically denied committing the robbery and proceeded to disclose a defense of alibi. He stated that on the night of the robbery he was engaged in a game of Yahtzee at his fiance's home, Jean Jones. He testified that on that day he had met his fiance at her employment at 10th and North Walnut and followed her to her home at approximately the time of the alleged robbery. He stated that while at the home of his fiance he received a telephone call from one Carol Ashly who was his fiance's sister. He testified that the various phone calls and the time of the trip to his fiance's home made it impossible for him to be on the South side of Oklahoma City at the time the robbery was committed.

Jean Jones, the defendant's fiance, Brenda Johnson, the young daughter of Mrs. Jones, and Carol Ashly were all called as defense witnesses and essentially corroborated the testimony of the defendant.

Orvil William Cates testified that he was a friend and acquaintance of the defendant and that he was arrested for the same crime along with the defendant but that he was subsequently released by the police. Ruth Odom testified that she was the Court Reporter at the preliminary hearing in the instant case and stated Miss Annis Wilson had testified on cross-examination at the preliminary hearing as follows:

"Q. Would you read the portions of the —or, did you read the portions I have requested you to read.

A. Question: "If he were somewhere else, could you possibly be mistaken?" The District Attorney raised an objection, the Judge sustained the objection.

Next Question: "Is there any possibility you could be mistaken?"

Answer: "There is always a possibility someone is wrong."

Such testimony was in conflict with that given by Miss Wilson during Direct Examination by the State. However, she further states the record of the preliminary hearing further reflects, the prior two (2) questions thereto were as follows:

THE WITNESS: Question: "Ma'am, are you sure this is the man that robbed you?"

Answer: "I wouldn't have said so if not."

The defense then rested.

◼ The defendant's first assignment of error principally attacks the in-court identifications of the defendant by State's Witness Wilson and State's Witness Cummings. The defendant alleges the extrajudicial identification of the defendant by Witness Wilson and Witness Cummings in a photographic exhibition conducted by Officer Shubert and in a subsequent police station line-up, rendered the in-court identifications of the defendant by the witnesses inadmissable. We need only note that the transcript of the trial proceedings in the instant case fails to reflect any objection to said in-court identifications nor does the record reflect that the defendant at any time prior to or during the course of the trial requested an evidentiary hearing on this matter. The defendant's right to have a hearing conducted outside the presence of the jury on the question of the extrajudicial identification procedure is dependent upon his raising a timely objection to the in-court identification. See *Towning v. State*, Okl.Cr., 521 P.2d 415 (1974). Also see *Anthamatten v. State*, Okl.Cr., 506 P.2d 959 (1973). For this reason we find such a contention to be improperly before this Court.

◼ However, we further note that the instant case is totally devoid of any evidence that there exists any "very substan-

tial likelihood of irreparable misidentification," *Simmons v. U. S.*, 390 U.S. 377 at 384, 88 S.Ct. 967, at 971, 19 L.Ed.2d 1247, by the prosecuting witnesses. For the reasons herein stated we find this contention of the defendant to be without merit.

■ Also, in the defendant's first assignment of error he apparently contends that the prosecuting attorney effectively brought before the jury testimony of Barbara Cummings who in fact did not testify at trial. Although we do not condone such prosecutorial tactics, we need only note that such evidence, while notably only cumulative in nature, was admitted without objection and thus cannot be raised for the first time on appeal. See *Carson v. State*, Okl.Cr., 529 P.2d 499 (1974). For the reasons herein stated we find the defendant's first assignment of error to be without merit.

Defendant's final assignment of error asserts "There was misconduct in the trial when the jury fell asleep during the trial." This issue of an alleged "sleeping juror" was first raised in the motion for new trial at which time the defendant in support thereof presented argument and an affidavit of one Joyce Davis. The affidavit in substance alleges that Miss Davis observed the proceedings of the trial of the instant case and that during these proceedings she observed one of the jurors fall asleep during the defendant's testimony and during the closing arguments of the attorneys. The affidavit further states Miss Davis also observed "several of the other jurors going to sleep during the trial and particularly when the evidence and the witnesses for Melvin S. Randleman were testifying." The defendant cites no supportive authority with the exception of a case which observes the general rule that a defendant is entitled to a fair and impartial trial and an annotation upon this issue. *Yarbrough v. Bellamy*, 197 Okl. 493, 172 P.2d 801; 88 A.L.R.2d 1275.

The transcript of the proceedings held on the Motion for New Trial reflects that counsel for defense asked the court to take notice that he would testify he observed this particular juror sleeping during the closing arguments and that "at one occasion she fell completely out of the chair and almost into the floor during the testimony of the defendant." Miss Davis also testified at the Motion for New Trial hearing and stated that she was not claiming any of the jury was asleep except the one particular juror. She stated that the other jurors appeared to be sleeping. At the same hearing Mr. Stubbs made the additional statement that he did not have occasion to see the particular juror at any time except during the closing argument at which time she "looked like she was sleeping."

■ Defense counsel has a duty to call the juror's inattentiveness to the court's attention when first noticed which certainly provides for the opportunity for remedial action to assure that the defendant is not prejudiced. See *U. S. v. Carter*, 433 F.2d 874 (10th Cir. 1970); *U. S. v. Curry*, 471 F.2d 419 (5th Cir. 1973); *U. S. v. Hester*, 489 F.2d 48 (8th Cir. 1973); *State v. Jones*, 187 Kan. 496, 357 P.2d 760, 88 A.L.R.2d 1269 (1960); and 88 A.L.R.2d 1275. Also, "conduct of the juror in open court was a matter of which the trial court had judicial knowledge and could take judicial notice." *U. S. v. Carter*, supra, at 876.

We observe the transcript of the Motion for New Trial hearing reflects the District Attorney stated he was quite attentive to the jury and that he never recalled seeing the juror fall out of her chair. Further, we find no allegation or evidence that the trial judge ever observed any of the jurors sleeping during the proceeding or that the trial judge was neglectful in his duty of assuring proper courtroom decorum. Also noteworthy is Miss Davis' testimony at the Motion for New Trial hearing which disclosed that she made defense counsel aware of the "Van Winkle incidents" when the jury was deliberating. And, the record

**94**

further reflects that the trial judge could not recall ever being apprised of such incident.

 Thus, in view of the defense counsel failing to apprise the trial court of the alleged juror's slumber and especially in the absence of any showing of prejudice to the defendant we find the defendant's assignment of error to be unpersuasive and thus, there exists no reason to disturb the trial court's ruling on the Motion for New Trial. However, we are constrained to observe that to assure an adequate record upon such an issue the trial court should make his observations of the trial a part of the record in his ruling upon such an issue.

For all of the above and foregoing reasons the judgment and sentence appealed from is, accordingly, AFFIRMED.

BRETT, P. J., and BUSSEY, J., concur.