**Kenneth Earl PARKER, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–77–345.**

Court of Criminal Appeals of Oklahoma.

Sept. 20, 1977.

Rehearing Denied Nov. 2, 1977.

John T. Elliott, Public Defender, Robert A. Ravitz, Asst. Public Defender, Oklahoma County, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Catherine Gatchell Naifeh, Legal Intern, for appellee.

## OPINION

BRETT, Judge:

Appellant, Kenneth Earl Parker, hereinafter referred to as defendant, was charged, tried and convicted by a jury in the Oklahoma County District Court, Case No. CRF–76–3089, of the offense of Robbery With Firearms, After Former Conviction of a Felony. The jury assessed punishment at thirty-seven (37) years' imprisonment. From said judgment and sentence defendant has perfected an appeal to this Court.

This case arose out of the armed robbery of the Dairy Queen restaurant in the Village, Oklahoma, at about 11:30 p. m. on July 25, 1976. The State's evidence showed that at the time and place aforesaid the restaurant was closed, although several employees and customers were still on the premises. Two black men entered through a rear door. Both had their left hands over their mouths and carried guns. One, dressed in gold trousers and a green flowered shirt, announced, "this is a robbery," and proceeded to the front of the store. The other robber went into a back room. The robber who went to the front directed Jimmy Marson, an employee, to give him the money from the register. Marson complied as another employee, Steve Bedwell, stood nearby and watched. Several other customers and employees watched as well from a short distance away, including Cindy Aiello and Karen Morton. After the money was placed in a sack, the man in the flowered shirt walked to the back of the store where he was joined by his companion, who had been in the back room. As they left,

they dropped their hands from their mouths and looked at witnesses Morton and Aiello. They then left, and the police were called.

At trial, Jimmy Marson was unable to identify defendant; however, both Aiello and Morton stated that defendant Parker was the man in the flowered shirt who proceeded to the front of the store and took the money from Marson. On cross-examination of Aiello and Morton, defense counsel went into great detail concerning several lineups and photo lineups which the witnesses had viewed. ·

The State also called Detective Heath of the Oklahoma City Police Department who testified as to his investigation, and as to the manner in which the lineups were conducted.

The only evidence offered by defendant was the testimony given by Steve Bedwell at the preliminary hearing on this matter. Bedwell stated at the preliminary hearing that he was present and stood only a few feet from Marson as Marson gave the money to the robber in the flowered shirt. However, he too was unable to identify defendant.

In support of the after former charge, the State introduced evidence that defendant had been previously convicted of armed robbery.

Defendant's first assignment of error is that the trial court committed fundamental error in not giving an in camera hearing, on its own motion, to determine whether any lineup in which defendant appeared and was identified was held after he had been charged, and whether he had been without benefit of counsel. No request for such a hearing was made.

■ After carefully reviewing the record, we are of the opinion that it contains sufficient evidence from which we can conclude that all lineups in which defendant participated, and in which he was identified, were held prior to the filing of the information. At trial Aiello and Morton testified that they each identified the defendant at separate lineups. Their testimony further indicates that these lineups were held at different times on the same day, although neither could state exactly what day that was. State's Exhibit No. 1, an Oklahoma City Police Department "showup report," indicates that defendant and four others were placed in a lineup at 10:15 p. m. on August 13, 1976. Detective Heath, contrary to what Aiello and Morton· stated, testified that the two girls identified defendant at the same lineup, and that that lineup was the one held at 10:15 p. m. on August 13. The information in the present case was filed on August 17.

Viewing the evidence thusly, we conclude that it matters not whether the girls attended the same lineup or whether they attended different lineups on the same day, since in either case the record is complete enough to show that the lineup or lineups were held prior to charges being filed. There was thus no need for the appointment of counsel at the time the lineups were held. *Kirby v. Illinois*, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972); *Wilson v. State*, Okl.Cr., 556 P.2d 1311 (1976).

■ Defendant's second assignment of error is that the identification of defendant was so tainted by suggestive lineup procedures that he was denied a fair and impartial trial. We decline to reach this issue inasmuch as defendant at no time moved to suppress the identification, nor did he at any time request an in camera hearing to inquire into the matter. *Randleman v. State*, Okl.Cr., 552 P.2d 90 (1976).

Defendant's final assignment of error is that the trial court erred in allowing the testimony of Officer Heath concerning the lineup in which defendant was identified, because Officer Heath did not completely honor defendant's subpoena duces tecum for photographs of the lineup and for photographs which were shown to the various witnesses during his investigation.

No explanation for the failure to obey the subpoena duces tecum appears in the record, nor is there a motion for continuance to allow the witness to obtain the photographs, if they were obtainable.

Defendant couches his argument in terms of the right to confront witnesses guaranteed by the Sixth Amendment to the United States Constitution. Defendant asserts that because he lacked the photographs he was not given the opportunity to cross-examine Heath fully with respect to them. However, the record reflects that after defendant's objections to Heath's testimony were overruled, defendant cross-examined Heath extensively with regard to the lineups and the photographs shown to the witnesses. State's Exhibit No. 1, the showup report, contained descriptions of all the persons in the lineup. Concerning the photographs shown to the witnesses, it appears that no witness ever stated to Heath that any one of the photographs actually depicted the robber. Rather, statements were made by the witnesses to Heath to the effect that one or another photograph "looked like" the robber. Heath testified that as he showed the pictures to the witnesses they would state that one photograph or another represented a person who had the same eyes, or chin, or nose, etc., as defendant, but that no identifications were made.

The foregoing considered, we are of the opinion that at most it was harmless error to permit Heath to testify after he failed to honor the subpoena duces tecum. The photographs were of limited utility inasmuch as no identification was made from them, and defendant was given an opportunity to cross-examine Detective Heath, which he in fact did. There was thus no substantial violation of defendant's rights. Title 20 O.S.1971, § 3001, Harmless Error.

For the foregoing reasons, the judgment and sentence is *AFFIRMED.*

BUSSEY, P. J., concurs.