**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 17, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

RAYE DAWN SMITH,

          Petitioner - Appellant,

v.

DEBBIE ALDRIDGE, Warden,

          Respondent - Appellee.

No. 17-6149

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**(D.C. NO. 5:12-CV-00473-C)**

Stephen Jones, Jones, Otjen, Davis & Bloyd, Enid, Oklahoma, for Petitioner-Appellant.

Theodore M. Peeper, Assistant Attorney General (Mike Hunter, Attorney General of Oklahoma, with him on the brief), Office of the Oklahoma Attorney General, Oklahoma City, Oklahoma, for Respondent-Appellee.

Before **TYMKOVICH**, Chief Judge, **BALDOCK**, and **HOLMES**, Circuit Judges.

**TYMKOVICH**, Chief Judge.

Oklahoma charged Raye Dawn Smith with several child abuse charges stemming from the death of her two-year-old daughter, Kelsey, who died from blunt force trauma to the abdomen. Kelsey's death, and Smith's subsequent trial,

generated substantial public interest and publicity. In the end, a jury convicted Smith of enabling child abuse.

After her conviction, Smith moved for a new trial based on claims of juror misconduct and jurors' exposure to information outside the courtroom. In support, Smith produced two affidavits from individuals who had attended the trial. Both alleged several jurors slept during the trial, and one juror slept continuously. Smith also claimed jurors were exposed to extraneous outside-the-court publicity about the trial that tainted the verdict. The trial court denied the motion. In ruling on the motion, the trial judge asserted he closely watched the jury and did not see a juror continuously sleeping.

Smith then appealed to the Oklahoma Court of Criminal Appeals (OCCA), raising numerous claims. She also requested an evidentiary hearing on a variety of issues, including her claims related to juror misconduct. The OCCA granted the request in part. But the OCCA refused to hold a hearing on the sleeping-juror allegations because it concluded the trial judge's statement that no juror slept throughout the trial adequately refuted the allegations to the contrary in the affidavits Smith submitted. Ultimately, the OCCA denied relief on all of Smith's claims.

Smith now seeks a writ of habeas corpus in federal court under 28 U.S.C. § 2254, advancing three primary arguments. She bases the first two on allegations that a juror slept throughout the duration of her trial. First, Smith

-2-

claims this violated her constitutional rights to an impartial jury and due process. Second, Smith argues her counsel performed ineffectively by failing to bring the sleeping juror to the court's attention. Finally, Smith asserts the jury's improper exposure to outside information also violated her constitutional rights to an impartial jury and due process.

The district court denied Smith's petition. We **AFFIRM**. The OCCA did not base its denial of Smith's claims on an unreasonable determination of the facts. And Smith does not argue the OCCA's opinion was contrary to, or unreasonably applied, clearly established federal law. Accordingly, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) forbids us from granting relief.

# I. Background

We begin with the facts of the crime and the relevant procedural history.

### A.     *The Crime and Smith's Conviction*

Raye Dawn Smith's two-year-old daughter, Kelsey, died in October 2005 from blunt force trauma to the abdomen. The medical examiner considered the death a homicide. Eventually, Oklahoma charged Smith with child abuse or, alternatively, enabling child abuse by injury.

Kelsey's death—and Smith's subsequent indictment, trial, and conviction—garnered great public attention and immense media coverage. This

was due in part to the family of Kelsey's father starting a website entitled "Kelsey's Purpose." The site aimed to "seek justice" for Kelsey's killer, and it all but accused Smith of causing the child's death. App. at 529. Indeed, the site prominently featured allegations of abuse against Smith.

Because of the widespread public interest in the case, Smith moved to change the trial's venue. The court granted the request and moved the trial to an adjacent county. This change of venue did not, however, altogether eliminate the media's laser-like focus on the case. Indeed, many members of the media attended Smith's trial, personally watching the proceedings and then providing on-camera updates outside the courthouse.

After an eight-day trial, the jury convicted Smith of one count of enabling child abuse. In accordance with the jury's recommendation, the court sentenced her to 27 years' imprisonment.

### B. Post-Trial Motions and Appeal to the OCCA

After sentencing, Smith moved for a new trial in the state district court. She alleged numerous errors, including that jurors' failure to stay awake throughout the trial prejudiced her defense. In support, Smith attached two affidavits from individuals who attended the trial. Both claimed they saw multiple jurors sleeping during Smith's trial, including one female juror who slept continuously.

The trial court denied the motion. In doing so, it expressly rejected the allegation jurors slept during trial:

In *Randleman v. State*, 552 P.2d 90 (Ok. Cr. 1976), the Court stated, "The trial court should make his observations of the trial (i.e. jurors who might have fallen asleep) a part of the record in his ruling upon such an issue."

The following is the Court's observation: During the course of this trial, as with any trial, I constantly and zealously view the jury in order to ascertain whether or not they are alert and attentive, as required by the Court's instructions and by the law. The allegation that as many as nine jurors slept during the trial is absolutely false and untrue. It did not happen. I observed one juror who on one day appeared to be asleep. I immediately admonished the jury on the record to remain alert and then recessed court. I continued to monitor the jury in general and this juror in particular and saw no repetition of this behavior. No other juror ever gave any appearance whatsoever of falling asleep. One juror did bring what appeared to be a throw and placed it over her shoulders, inasmuch as the courtroom was too cold for her personal preference.

The jurors were faithful and conscientious to their duty, and any attempt to say otherwise maligns them.

App. at 170.

Smith then appealed to the OCCA, raising a number of claims. She also requested an evidentiary hearing on various issues, some of which related to her claims of juror misconduct. To support her contention a juror slept throughout the trial, Smith submitted affidavits from five jurors. In four of the affidavits, jurors alleged that one of their fellow jurors, L.E., continuously slept during trial. The fifth and final affidavit was from juror L.E. herself. She admitted that "[d]uring the trial, [she] continually fell asleep and the woman next to [her] was told to

-5-

nudge [her] to keep [her] awake." App. at 442. L.E. stated the reason she kept

falling asleep was her low potassium levels. Though she had a prescription for

potassium to prevent this very problem, L.E. claimed she "never c[ould] remember

to take it." *Id.*

The OCCA granted Smith's request for an evidentiary hearing in part, but

not for the purpose of determining if a juror actually slept throughout the trial.[1]

After the evidentiary hearing, the OCCA denied relief on all of Smith's claims.

Next, Smith filed a petition for habeas relief pursuant to 28 U.S.C. § 2254,

arguing she was entitled to relief for many reasons. The district court denied the

petition. But the court granted Smith two certificates of appealability (COA). The

first addresses whether juror misconduct deprived Smith of her constitutional

rights to an impartial jury and due process. More precisely, the district court

granted a COA on whether jurors engaged in misconduct in two ways: by sleeping

continuously during trial, and by being prejudicially exposed to outside

information. The second COA addresses whether Smith's trial counsel performed

ineffectively by failing to object to the supposedly sleeping juror.

## II.   Standard of Review

---

[1]  Specifically, the OCCA ordered a hearing on two issues: (1) whether
juror B.O. received information outside the courtroom by searching the Internet,
watching news media, or from any other source, and, (2) if so, whether juror B.O.
shared this information with other jurors.

On appeals from the denial of a petition for habeas corpus, we review the district court's legal analysis de novo and its factual findings for clear error. *Smith v. Duckworth*, 824 F.3d 1233, 1241–42 (10th Cir. 2016). But Congress has sharply limited our review of state court decisions. When a state court adjudicates a petitioner's claim on the merits, AEDPA bars us from granting relief except in two narrow circumstances.

First, we can grant relief if the state court's decision was contrary to, or an unreasonable application of, clearly established federal law the Supreme Court established. *See* 28 U.S.C. § 2254(d)(1).

Second, we can grant relief if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." *Id.* § 2254(d)(2). Section 2254(d)(2) imposes "a daunting standard" for two primary reasons. *Byrd v. Workman*, 645 F.3d 1159, 1172 (10th Cir. 2011). To start with, the state court's factual determination must be "objectively unreasonable." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). This is a high hurdle to clear. Indeed, that we think a state court's factual determination was incorrect—or, put differently, that we would have made a different determination ourselves in the first instance—does not render the state court's determination objectively unreasonable. *See Brumfield v. Cain*, 135 S. Ct. 2269, 2277 (2015). Rather, a factual determination only qualifies as unreasonable under § 2254(d)(2) if all "[r]easonable minds reviewing the record" would agree it

was incorrect. *Brumfield v. Cain*, 135 S. Ct. 2269, 2277 (2015). Making matters more difficult, it is not sufficient to show the state court's decision merely *included* an unreasonable factual determination. Instead, by its terms § 2254(d)(2) only empowers federal courts to grant relief if the state court's decision was "*based on* an unreasonable determination of the facts." *Byrd*, 645 F.3d at 1172.

Simply stated, proving an unreasonable determination of fact is difficult to do—just as it was "meant to be." *Richter*, 562 U.S. at 111–12. This is because AEDPA functions as "'a guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* at 102–03 (quoting *Jackson v. Virginia*, 443 U.S. 307, 322 n.5 (1979)).

# III. Analysis

Smith raises three claims. We consider the first two claims together before turning to Smith's final argument about jurors' alleged exposure to extraneous information.

## A. *Juror Misconduct Claims*

Two of Smith's claims center on her contention a juror slept during most of her trial.

She bases her first argument on the Sixth and Fourteenth Amendments. The Sixth Amendment guarantees criminal defendants the right to an impartial, competent, and unimpaired jury. *See, e.g., Tanner v. United States*, 483 U.S. 107,

126–27 (1987). And failing to provide criminal defendants with a "fair trial by a panel of impartial" jurors also violates the Fourteenth Amendment's guarantee of due process. *See Irvin v. Dowd*, 366 U.S. 717, 721–22 (1961). Accordingly, if "jurors fall asleep and are unable to fairly consider the defendant's case," this could violate both of these constitutional rights. *United States v. McKeighan*, 685 F.3d 956, 973 (10th Cir. 2012); *see United States v. Freitag*, 230 F.3d 1019, 1023 (7th Cir. 2000). That a juror slept at some point during trial does not, however, automatically entitle a defendant to relief. Instead, "juror misconduct, such as inattentiveness or sleeping, does not warrant a new trial absent a showing of prejudice." *McKeighan*, 685 F.3d at 973.

Smith also argues her trial counsel performed ineffectively by failing to notice and then advise the court that a juror was sleeping. To prove this, she must show both that her counsel performed deficiently, and that she suffered prejudice from this deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Counsel performs deficiently if his representation falls "below an objective standard of reasonableness" under prevailing professional norms. *Id.* at 688–89. And such performance prejudices a defendant if there is a reasonable probability that, but for counsel's performance, the result of the proceeding would have been different. *Id.* at 694.

The OCCA denied relief on both of these claims for the same reason. Though the five juror affidavits and the two affidavits from trial attendees

-9-

contended that one juror continuously slept during the trial, the trial judge nevertheless insisted he zealously watched the jury and only saw one juror sleeping at one point during the trial. The OCCA thus concluded "[t]he judge's observations refute[d] the affidavits submitted by Smith," and it accordingly rejected both claims. App. at 682. Put differently, the OCCA denied both claims on a factual ground. The factual predicate of each claim was that a juror, in fact, continuously slept during Smith's trial. Because the OCCA credited the trial judge's assertion that no such thing occurred, both claims relating to the sleeping juror necessarily failed.

The parties agree the OCCA adjudicated this claim on the merits and we can only disturb its decision if AEDPA's standards are satisfied. As Smith sees it, the OCCA based its denial of these claims on an unreasonable determination of the facts, so § 2254(d)(2) permits us to grant relief. She also argues the federal district court erred by denying her request for an evidentiary hearing in that court.

We examine each contention in turn.

### 1. *Unreasonable Determination of the Facts*

Smith wages a two-front attack against the OCCA's finding that the judge's assertion no juror constantly slept was more credible than, and thus refuted, the contrary allegations in Smith's affidavits. She first claims that, by not ordering an evidentiary hearing, the OCCA employed a flawed fact-finding process. She also contends the OCCA's credibility determination itself—crediting the judge's

-10-

statement over Smith's affidavits—qualifies as an objectively unreasonable factual determination under § 2254(d)(2).

### a. Defect in the Fact-Finding Process

As we previously explained, when a state court bases its decisions on an objectively unreasonable factual determination, AEDPA's limitation on relief is lifted. § 2254(d)(2). But before addressing Smith's argument that the OCCA's decision satisfies this standard, it is helpful to consider a more fundamental question: what constitutes a factual determination in the first place? Most commonly and intuitively, statements about the state-court record are factual determinations. *See, e.g.*, *Byrd*, 645 F.3d at 1171 (describing how a state court can unreasonably determine the facts by "misapprehend[ing] or misstat[ing] the record"). So if a state court cites the record incorrectly—by saying, for instance, that someone gave testimony at trial when they, in fact, did not—this could constitute an unreasonable factual determination.

Smith's theory, however, focuses on a different kind of factual determination. In her view, flaws in a state court's fact-finding *process* can render its substantive factual determinations unreasonable. This circuit has never opined on this process-based theory. But the Ninth Circuit has repeatedly done so, and Smith relies heavily on these cases. *See, e.g.*, *Hurles v. Ryan*, 752 F.3d 768, 790–91 (9th Cir. 2014). In fact, the Ninth Circuit has articulated numerous ways in which a state court's fact-finding process can render its factual findings

-11-

unreasonable.  *See Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004), *abrogated in part on other grounds by Cullen v. Pinholster*, 563 U.S. 170, 210–12 (2011).  But only one of these procedural defects bears on this appeal: that when a "state court ma[de] evidentiary findings without holding a hearing and giving petitioner an opportunity to present evidence," the Ninth Circuit has concluded that "such findings clearly result in an 'unreasonable determination' of the facts." *Id.* at 1001.

We agree that when a state court denies a request for an evidentiary hearing and then makes factual determinations, the failure to hold a hearing *can*, in limited circumstances, render the court's subsequent factual findings unreasonable.  This rule is unremarkable.  After all, "substance and procedure frequently form a Gordian knot—impossible to disentangle." *Utah Republican Party v. Cox*, 885 F.3d 1219, 1246 (10th Cir. 2018) (Tymkovich, J., concurring in part and dissenting in part).  Courts have thus long recognized that the "line between procedural and substantive law is hazy." *Erie R. Co. v. Tompkins*, 304 U.S. 64, 92 (1938) (Reed, J., concurring).  It is often difficult to completely differentiate procedure and substance because procedure often *affects* substance—that is, the procedural process through which a court makes a substantive determination influences the reasonableness of the substantive determination itself.  *See United States v. Barnes*, 890 F.3d 910, 916–17 (10th Cir. 2018) (explaining how, in the sentencing context, the "distinction between procedural and substantive reasonableness is . . .

-12-

not necessarily sharp" since the procedures a court employs to sentence a defendant influences the reasonableness of the substantive sentence).

We consequently have little trouble concluding the procedures a state court employs to make factual determinations—here, deciding whether to order an evidentiary hearing—can affect the reasonableness of the court's subsequent factual determinations. And sometimes, declining to hold an evidentiary hearing may so affect, and indeed infect, a state court's fact-finding process that it renders the court's factual determinations unreasonable. *See Hurles*, 752 F.3d at 790–91. But this will be a rare occurrence because § 2254(d)(2)'s stringent standard still applies. Thus, a state court's decision not to hold an evidentiary hearing only renders its factual findings unreasonable in this context if all "[r]easonable minds" agree that the state court needed to hold a hearing in order to make those factual determinations. *See Brumfield*, 135 S. Ct. at 2277; *see also Taylor*, 366 F.3d at 999–1000. In other words, failing to hold such a hearing only overcomes AEDPA's bar on relief if "any appellate court to whom the defect [was] pointed out would be unreasonable in holding that the state court's fact-finding process was adequate." *Taylor*, 366 F.3d at 1000.

This decision, then, does not require state courts to hold evidentiary hearings in all, or even most, cases. Nor does it suggest petitioners can easily escape AEDPA's deferential standard because the state court denied their request for an evidentiary hearing. To the contrary, most of the time (including in this

case) it will be reasonable for a state court to make factual determinations based on the evidence before it without holding a hearing. Often, after all, a hearing would only repeat the same evidence already presented to the court in either the record below or the application for an evidentiary hearing. And when assessing the objective reasonableness of a state court decision, our review must be "particularly deferential to our state-court colleagues," *id.*, mindful of the fact that our review under AEDPA serves only as "a guard against extreme malfunctions in the state criminal justice systems," *Richter*, 562 U.S. at 102–03.

Applying this standard here, we conclude § 2254(d)(2) forbids us from disturbing the OCCA's decision. This is not one of those rare cases in which all reasonable courts would have concluded it was necessary to hold an evidentiary hearing in order to conclude the trial judge's statement no juror continuously slept adequately refuted the contrary assertions in the affidavits Smith produced. Rather, it was reasonable for the state court to find the judge's statement more persuasive than the affidavits. The reason for this is, at bottom, simple: the evidence did not equally support the judge's statement and the allegations in Smith's affidavits. Instead, additional factors corroborated the judge's direct observation that no juror slept continuously throughout trial.

To start with, the fact that no lawyer on either side made any mention of sleeping jurors strongly supports the OCCA's decision to credit the trial judge's statement. After all, if a juror had, in fact, been *continuously* sleeping for eight

days, it seems implausible the lawyers on both sides would have failed to notice, and alert the court of, such egregious juror misconduct. This is especially so since five lawyers were in the courtroom—three for Oklahoma and two for the defense.[2] And each of these attorneys, of course, had a vested interest in the case and would have been closely watching the jury to see how it reacted to the evidence. Thus, the silence of all five lawyers about a sleeping juror buttresses the judge's belief no juror continuously slept throughout the trial.

We realize Smith contends her counsel performed ineffectively for failing to so object. But this does not explain the lack of objection from *Oklahoma's lawyers*. They, too, had an interest in whether the jury was paying attention to the case, yet they also failed to ever alert the court that a juror was continuously asleep.[3]

It is true the trial judge twice referenced sleeping jurors. On the second day of trial, before the judge released the jurors for lunch, he reminded them to remain vigilant and "be sure [their] eyes [were] open at all times."[4] Vol. II Trial Tr. at

---

[2] *See Oral Argument* at 21:25.

[3] It is also noteworthy the media made no mention of the allegedly sleeping juror. After all, by Smith's own account, the trial was a "media circus" at which "[n]ews reporters lined the front two rows on the lefthand side of the courtroom" and television cameras were set up outside the court to report on the trial's happenings. Aplt. Br. at 25, 28.

[4] In full, the trial judge said the following:

(continued...)

-15-

368. Similarly, on the fourth day of trial, before releasing the jurors for the day, the judged asked them to "redouble [their] efforts to remain alert and attentive" and remember "what [he] said the other day about the lower eyelid catching the upper eyelid." *Id.* at 1008. And indeed, the judge acknowledged that, on one occasion, he saw a juror sleeping and quickly admonished the juror for doing so.

But these references to a sleeping juror, in fact, add credibility to the judge's assertion no juror *continuously* slept during the eight-day trial. The judge only could have noticed a juror sleeping, after all, if he was attentively watching the jury. And the judge's admonishment to one juror highlights how he was concerned about juror misconduct and therefore monitored the jury's behavior. And perhaps even more importantly, the admonishment evidences the judge's willingness to take steps to correct any misbehavior he witnessed.

We therefore have a case in which the parties presented competing contentions to the OCCA, but the evidence before the OCCA did not equally

---

[4](...continued)

> I want to talk to you just about a minute about something. You're not used to sitting and listening to things except, perhaps, in church on Sunday, and sometimes your lower eyelid might want to reach up and grab the other one. Well, don't do it. You have to be like Caesar's wife. You have to be above reproach and be sure that your eyes are open at all times, or someone might accidentally think that you're snoozing.

Vol. II Trial Tr. at 368.

support both sides of the story. For the reasons we just explained, the OCCA could well have concluded that more evidence supported the trial judge's assertion no juror continuously slept than the contentions to the contrary in the competing affidavits. Thus, a reasonable court could have concluded it did not need to hold an evidentiary hearing in order to credit the trial judge's conclusion no juror constantly slept over the affidavits Smith marshaled. *See Frost*, 749 F.3d at 1225. The OCCA's denial of Smith's request for a hearing, then, did not render its subsequent factual determinations unreasonable under § 2254(d)(2).

Our conclusion accords with a recent decision by the Eleventh Circuit. In that case, like here, the petitioner claimed flaws in the state court's fact-finding process stripped its factual finding of deference under AEDPA. *Landers*, 776 F.3d at 1297. More precisely, he alleged it was objectively unreasonable for the state court to "resolve[] a credibility dispute on the basis of dueling affidavits, without an evidentiary hearing." *Id.* The Eleventh Circuit disagreed. *Id.* at 1297–98. The "state court had plausible reasons," it emphasized, to credit one set of affidavits over another—namely, that the "the dueling affidavits" bore "strikingly different indicia of reliability." *Id.* at 1297. Accordingly, *Landers* held that it was objectively reasonable for the state court to credit the more strongly supported set of affidavits over the other without holding an evidentiary hearing. In this case, like *Landers*, the OCCA "had plausible reasons" to credit the judge's statement.

-17-

*Id.* The OCCA accordingly acted reasonably by crediting a stronger set of allegations over a shakier set without an evidentiary hearing.

Smith highlights how the five juror affidavits were *not* before the trial judge when he concluded no juror continuously slept; at that point, Smith had only produced two affidavits from trial attendees. She thus suggests the OCCA erred by crediting the judge's account, which was based on incomplete information. It is true the trial judge did not see the juror affidavits before asserting no juror continuously slept. But the judge saw something much more important—*the trial itself.* We therefore fail to understand how the judge's statement, which was based on his personal observation of the trial, could have been based on incomplete information.

To conclude, we emphasize the limited nature of our review. No doubt, the affidavits Smith cites contain serious charges. And the fact that each juror affidavit describes the same event in different, detailed terms lends credibility to their accounts. So perhaps, if presented with this question in the first instance, we would have ordered an evidentiary hearing on the issue. But AEDPA demands more. It allows us to disturb the OCCA's decision *only* if *no reasonable court* could have credited the trial judge's statement without holding a hearing. And because other evidence created strong inferences in favor of the judge's conclusion no juror constantly slept, we conclude the OCCA acted in an objectively reasonable way by endorsing his account.

-18-

In sum, the OCCA's decision not to hold an evidentiary hearing does not render its factual findings unreasonable under § 2254(d)(2).

### b.        The OCCA's Credibility Determination

Smith also claims the OCCA's credibility determination itself—crediting the judge's statement over the jurors' affidavits—qualifies as an objectively unreasonable factual determination under § 2254(d)(2). We reject this contention for the reasons described above. Additional evidence, namely the lack of any objections by counsel to the allegedly sleeping juror, supports the OCCA's finding. We therefore cannot say crediting the judge's account qualifies as an objectively unreasonable determination of facts under § 2254(d)(2). AEDPA accordingly restricts us from granting relief.

### 2.        Request to Remand to the District Court for an Evidentiary Hearing

Smith also asks us to remand this case to the district court to conduct an evidentiary hearing. Her argument focuses on § 2254(e)(2). Although that subsection bars federal courts from holding evidentiary hearings if the petitioner "failed to develop the basis of the claim in State court," 28 U.S.C. § 2254(e)(2),[5]

---

[5] There are some exceptions to this rule, none of which are relevant to this appeal. The provision provides in full:

> (2) If the applicant has failed to develop the factual
> basis of a claim in State court proceedings, the court
> shall not hold an evidentiary hearing on the claim unless

(continued...)

it does not bar us from holding a hearing in this case, Smith says, because she *did* try to develop the basis of her claim before the OCCA by requesting an evidentiary hearing. In support, she cites *Miller v. Champion*, 161 F.3d 1249 (10th Cir. 1998). There, we held a habeas petitioner "diligently sought to develop the factual basis underlying his" petition when he asked for, but was denied, an evidentiary hearing in state court. *Id.* at 1253. *Miller* accordingly concluded that "AEDPA d[id] not preclude" the petitioner "from receiving an evidentiary hearing." *Id.* Smith thus claims *Miller* stands for the proposition that where, as here, the state court denied petitioner's request for an evidentiary hearing, § 2254 does not preclude a federal district court from holding a hearing. In short, Smith

---

[5](...continued)
       the applicant shows that--
           (A) the claim relies on--
              (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
              (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
           (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

§ 2254(e)(2).

argues that because § 2254(e)(2) does not bar us from ordering an evidentiary hearing, we can, in fact, order such a hearing.

We agree that § 2254(e)(2) does not prevent us from ordering an evidentiary hearing. But that is only half the story. When we review habeas petitions under § 2254, "the deferential standards prescribed by [§ 2254(d)] control whether to grant habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). And when determining whether petitioners have satisfied § 2254(d)'s deferential standard, our review is "limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170 (2011).[6] It follows that when we review petitions under § 2254, we can only order evidentiary hearings if the petitioner meets the requirements in *both* §§ 2254(d) and (e)(2). This rule makes good sense. After all, so long as § 2254(d)'s disallowance of relief continues to apply, federal courts *cannot consider* any evidence developed at an evidentiary hearing.

To the extent *Miller* contradicts this rule, its reasoning has been abrogated by *Schriro* and *Cullen*. Indeed, our circuit has already recognized this—albeit, not directly. *See Black v. Workman*, 682 F.3d 880, 895–96 (10th Cir. 2012)

---

[6] To be sure, in *Cullen* only § 2254(d)(1) was at issue. But as the Eleventh Circuit ably explained, *Cullen*'s limitation "applies even more clearly" to § 2254(d)(2), whose very terms focus our review solely on the "evidence presented in the State court proceeding." *See, e.g.*, *Landers*, 776 F.3d at 1295 (collecting cases).

(explaining that *Mayes v. Gibson*, 210 F.3d 1284, 1287–88 (10th Cir. 2000), which followed *Miller*'s reasoning, was "questionable in light of" *Cullen*). Smith's reliance on *Miller* is similarly misplaced.

In sum, because AEDPA bars us from granting relief for the reasons we explained above, it also bars us from ordering an evidentiary hearing.

## B.    Trial Publicity

Smith also claims pervasive and prejudicial media coverage of the trial exposed jurors to outside information in violation of her rights to an impartial jury and due process guaranteed by the Sixth and Fourteenth Amendments.[7]

A "jury's verdict 'must be based upon the evidence developed at trial,' not on extraneous information presented outside 'a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross-examination, and of counsel.'" *Matthews v. Workman*, 577 F.3d 1175, 1181 (10th Cir. 2009) (quoting *Irvin v. Dowd*, 366 U.S. 717, 722 (1961), then *Turner v. Louisiana*, 379 U.S. 466, 473 (1965)).  But habeas petitioners are not categorically entitled to relief when jurors are exposed to extraneous information.

---

[7] Smith spends less than a page in her brief arguing that the OCCA erroneously limited the evidentiary hearing to the alleged misconduct of Juror B.O., rather than a broader inquiry into juror misconduct.  *See* Aplt. Br. at 39. Smith inadequately briefed this argument.  *See Redmond v. Crowther*, 882 F.3d 927, 940–41 (10th Cir. 2018).  Indeed, Smith asks us to order the district court to conduct an evidentiary hearing on this issue, yet she makes no argument as to why *no reasonable court* could have denied the juror misconduct claim without a broader evidentiary hearing.

Petitioners must also prove prejudice. That is, the petitioner must establish that the jury's improper exposure to outside evidence had a "'substantial and injurious effect on the verdict"—in other words, that the error was not harmless. *See id.* (quoting *Fry v. Piller*, 551 U.S. 112, 127 (2007)).

The OCCA denied relief because, in its view, Smith could not show the alleged misconduct prejudiced her. The parties agree this qualifies as an adjudication on the merits. *See* Aplt. Br. at 31. Accordingly, § 2254(d) "control[s] whether to grant habeas relief." *Schriro*, 550 U.S. at 474. More precisely, we can only review this juror-exposure claim under de novo review if we first determine that § 2254(d)'s limitation on relief is lifted. Absent such a showing, we must deny the petition.

Despite this, Smith fails to argue the OCCA's denial of this claim satisfies the standard in either §§ 2254(d)(1) or (2). Indeed, although Smith's opening brief spends fifteen pages discussing this issue, *see* Aplt. Br. at 24–39, the brief makes no mention of AEDPA's controlling standard. Instead, the brief argues Smith is entitled to relief under de novo review. To be sure, the brief cites numerous Supreme Court cases it claims demonstrate the merits of Smith's claim. But it never explains whether or why the OCCA's opinion was contrary to, or an unreasonable application of, these cases. Moreover, the absence of any reference to AEDPA's deferential standard is especially glaring since the magistrate judge's opinion, which the district court adopted, thoroughly considered that issue and

concluded § 2254(d) forbade it from granting relief. Indeed, in a section entitled "Section 2254(d) Analysis" the lower-court opinion laid out the numerous reasons why § 2254(d) precluded relief.

And in fact, Smith's reply brief asserts that we can "address the merits of [her] *claims* de novo *only if* the OCCA's decision was 'based on an unreasonable determination of the facts.'" Reply Br. at 1 (emphases added) (quoting § 2254(d)(2)). In other words, we read the reply brief to expressly concede that Smith's only argument that § 2254(d) does not bar relief on *all of her claims* is based on subsection (d)(2), not (d)(1). And the only argument about § 2254(d)(2) she made dealt with juror misconduct related to the allegedly sleeping juror, which we discussed and rejected above.

Smith's opening brief, then, failed to argue the OCCA's rejection of this claim overcomes § 2254(d)'s bar on relief. It also failed to challenge the district court's conclusion to the contrary. This was a critical omission since § 2254(d) determines whether we can grant relief. Smith's silence on this threshold requirement thus renders the issue inadequately briefed, so we need not consider it. *See, e.g.*, *Redmond v. Crowther*, 882 F.3d 927, 940–41 (10th Cir. 2018); *Easteries, Inc. v. J.R. Simplot Co.*, 346 F.3d 1225, 1232 (10th Cir. 2003) (explaining how we will not "manufacture a party's argument for it"); *see also Phillips v. Calhoun*, 956 F.2d 949, 954 (10th Cir. 1992) (stating we will not

question the reasoning of a district court unless a petitioner "actually argues" against it).

Even if Smith had not forfeited this claim, § 2254(d) would compel denying relief for the reasons the magistrate judge ably explained. For one thing, the key cases Smith cites are readily distinguishable. For example, Smith relies heavily on *Sheppard v. Maxwell*, 384 U.S. 333 (1966). But in that case, the trial court made no effort to "control the release of leads, information, and gossip to the press by police officers, witnesses, and the counsel for both sides." *Id.* at 359. Here, in stark contrast, the trial court issued a gag order directing attorneys, law enforcement personnel, and witnesses not to discuss the criminal proceeding publically.

Indeed, the record reveals the trial court took significant steps to ensure the jurors were not exposed to extraneous outside information—despite the heightened public interest in the trial. The court granted the defense's request to transfer venue for this very reason. During the voir dire of potential jurors, moreover, both sides "were permitted to question the jury pool extensively," and these questions included "whether any potential juror had knowledge of the" case and "what effect the media's courthouse presence had upon each of them." App. at 339–40. Only three jurors had previously heard of the case. And throughout the course of the trial, the judge repeatedly reminded the jury not to look at any extraneous information.

Thus, although we agree that the media widely publicized Smith's indictment, trial, and ultimate conviction, the record persuades us that the trial court went to great lengths to ensure the jurors were not overly exposed to this publicity. And even if some jurors did, in fact, access some extraneous information, Smith falls far short of showing it was unreasonable for the OCCA to conclude the exposure did not prejudice her.[8]

## IV. Conclusion

For the foregoing reasons, we **AFFIRM** the district court's denial of Smith's § 2254 petition.

---

[8] Smith argues the OCCA should have presumed the media's extensive coverage of the trial prejudiced her. But the magistrate judge correctly rejected this argument. We only presume prejudice in "extreme situations," *United States v. Abello-Silva*, 948 F.2d 1168, 1177 (10th Cir. 1991), in which "publicity created either a circus atmosphere in the court room or a lynch mob mentality such that it would be impossible to receive a fair trial," *Gardner v. Galetka*, 568 F.3d 862, 888–89 (10th Cir. 2009). And for the reasons we just explained—namely, the change of venue and the judge's repeated instruction that jurors not access information outside of the courtroom—Smith cannot make this showing.

No. 17-6149 *Smith v Aldridge*
**TYMKOVICH**, Chief Judge, concurring.

The panel decision recognizes that under § 2254(d)(2) we may not grant relief unless a state court's determination "was based on an unreasonable determination of facts." 28 U.S.C. § 2254(d)(2). I write separately because I would flesh out this language in accordance with Supreme Court precedent. I would clarify that we may not grant a writ unless "all fairminded jurists would agree" that the state court's factual determination was incorrect. *See Frost v. Pryor*, 749 F.3d 1212, 1225 (10th Cir. 2014); *Harrington v. Richter*, 562 U.S. 86, 101 (2011).

I realize neither this circuit nor the Supreme Court has explicitly used the phrase "fairminded jurist" when defining what qualifies as an unreasonable factual determination under § 2254(d)(2). Rather, both rely on the phrase to define what constitutes an unreasonable application of federal law under § 2254(d)(1). *See Richter*, 562 U.S. at 101; *Frost*, 749 F.3d at 1225.

In my view, however, the "fairminded jurist" language from *Richter* illuminates the meaning of "unreasonable" in both §§ 2254(d)(1) and (d)(2). That is, just as a state court's application of federal law qualifies as "unreasonable" under § 2254(d)(1) only if no fairminded jurists could conclude the application correctly applied with federal law, *Richter*, 562 U.S. at 101, a state court's factual determination likewise qualifies as "unreasonable" under § 2254(d)(2) only if no fairminded jurist could conclude the determination was, in fact, correct.

Supreme Court precedent supports this rule. *Brumfield v. Cain* explained that a state court's factual determination is not unreasonable simply because "reasonable minds reviewing the record might disagree about the [factual] finding in question." 135 S. Ct. 2269, 2277 (2015). If reasonable minds differing about the correctness of a factual finding does *not* render a factual determination unreasonable, it follows that what *does* render a factual finding unreasonable is the fact that no reasonable person—or, put differently, no "fairminded jurist"—could agree with it. I would therefore make this explicit in the panel decision.